Wetherall and Mickle, Ex'rs, *vs.* Claggett.

(Decided 20th March, 1868.)

WILLIAM G. WETHERALL and ROBERT MICKLE, Executors of EDWARD GRIFFITH, *vs.* WILLIAM CLAGGETT.

*An omission in a Protest may be supplied by Independent testimony——Evidence of the due Notice of the Dishonor of a Promissory note——Practice.*

In an action on a promissory note, against the endorser, who pleaded that he had not received due notice of the dishonor of the note, in that the protest did not state, that payment of the drawer had been demanded and refused, it is competent for the plaintiff to supply this omission by independent proof, provided it be not inconsistent with, or contradictory of that contained in the protest.

The notarial certificate being defective and the notary dead, his chief clerk proved that when he went into the office of the notary in 1848, the printed form of notice to endorsers, did not contain the words, "payment therefor having been demanded and refused," but, that in consequence of a decision in New York, a change in the form of such notices was made by the insertion of those words——that all the old forms were destroyed, and in October, 1851, when the notes, upon which action was brought, against the endorser, became due, but one form of notice was used, and that contained the words, "payment therefor having been demanded and refused." He remembered perfectly the notes sued on, and identified them by his private mark thereon, as having

30                              v. 28

been handed to him for protest, and was confident that the notices made out by him, contained the words, "payment therefor having been demanded and refused." HELD:

That this evidence if believed by the jury, in addition to the proof in the notarial certificate, was legally sufficient to prove due notice of the dishonor of the notes.

The execution and endorsement of the notes sued on, having been admitted by the defendant, the Court in its ruling, could assume such facts to be true.

APPEAL from the Circuit Court for Cecil County.

This was an action of *assumpsit* by the appellee, as holder, against the appellant, Edward Griffith, as endorser, of three promissory notes for $1,200 each, all drawn by John Higinbotham in favor of and endorsed by the appellant, dated respectively the 16th, 20th and 23d of June, 1851, and payable four months after date. The suit was brought in Harford County Court, on the 14th of November, 1851, the *narr.* being in the usual form. An amended *narr.* was also subsequently filed, and issue joined upon the plea of *non-assumpsit.* The case was continued for one reason or another until February Term, 1866, when it was removed to the Circuit Court for Cecil county, where it was tried in September, 1866, resulting in a verdict for the appellee for $6,828.80 damages, and $407.22 costs.

At the trial below the plaintiff took one exception, which however was not insisted on, the verdict and judgment being in his favor. The defendant took four exceptions, the first of which was abandoned in this Court, the others are as follow:

*2d Exception:* The plaintiff then proved by Mr. Latimer, that he was chief clerk in the office of the late Joseph B. Williams, the Notary Public, from 1848 to 1852; that he was familiar with the practice of said office at that time; that but one form of notice was used by Mr. Williams in October, 1851, and that was a printed blank, with spaces for the description of the note protested; and that he was as certain as a man could be of any fact, that occurred fifteen years ago,

that the notices used in the protests in question contained the words, "payment therefor having been demanded and refused;" that in 1848, the printed form of notice to endorsers did not contain those words; but a change was made, in consequence of a decision in a lower Court in New York; and that new printed blanks, containing those words, were substituted, and the old ones destroyed. A printed notice, dated the 7th of November, 1851, was proved by him to be a notice, given by Mr. Williams, on that day, in the case of the protest of the particular note therein described; and said it was the only form of notice used in the office in 1851. He had no recollection that any such notices were sent to the defendant; nor did he know that any such notices were deposited in the post office in these cases; he was assisted in protesting notes, by three other clerks, &c.; he remembered the Higinbotham notes perfectly well, because he and the others in the office, were given to understand that some question of fraud was involved in them, and they were therefore especially careful in protesting them; Mr. Williams was a very particular man, and would always have every thing right; he had no counsel, but was himself a member of the bar; he thinks there is no question in the world as to his having made out the notices to Edward Griffith of the notes shown him, because there was but one endorser upon them, and this gave him less work to do.

To the admissibility of all said evidence, for the purpose of proving that due notices of the dishonor of said notes were given to the defendant in this cause, so as to bind him as endorser, he objected, but the Court overruled the objection, and permitted the evidence to go to the jury; to this ruling the defendant excepted.

*3d Exception:* The defendant then prayed the Court to instruct the jury, that the evidence offered on the part of the plaintiff, was not sufficient to prove that due notices of the dishonor of the notes sued on in this case, were given to the defendant, so as to hold him liable as endorser of said notes.

This prayer was refused by the Court, and the defendant excepted.

*4th Exception:* The plaintiff thereupon asked the Court to instruct the jury, substantially as follows: "If they should find due presentment of the notes, demand of payment from the maker, and refusal of payment by him; and that on the same days on which said notes so fell due respectively, notices addressed to the defendant at Perrymansville, were put in the post office in Baltimore, informing him that said notes had not been paid, payment therefor having been demanded and refused, and that he was held liable for payment thereof, then their verdict must be for the plaintiff; provided they should further find that at the maturity of said notes, the plaintiff was and still is the holder thereof, and that the post office of the defendant was Perrymansville, during the whole of the year 1851." This prayer the Court granted, and the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER, ALVEY and ROBINSON, J.

*Henry W. Archer, Thomas F. Bowie* and *William Schley,* for the appellant:

It is conceded, that evidence of notice to an endorser, other than the notarial certificate, may be given, if the same be not inconsistent with, or contradictory of the protest. *Sasscer vs. The Farmers' Bank,* 4 *Md. Rep.,* 409; *Graham vs. Sangston,* 1 *Md. Rep.,* 59; *Hunter vs. Van Bomhorst & Co.,* 1 *Md. Rep.,* 504.

The plaintiff offered the protest in evidence, as an *entirety.* He could not seggregate that portion, which proved demand and non-payment, from that portion which stated the character and the manner of notice given. The protest was the plaintiff's own evidence. For, being in writing, its meaning and effect was to be determined by the Court; and whilst it

established, *prima facie*, demand for payment and non-payment, and notice, yet it showed an insufficient notice. Hence it behooved the plaintiff to prove, by other competent evidence, *independently of the notarial certificate,* if in his power to produce such evidence, that due notice had been given. He could not vary or explain, by parol, the certificate itself. Now, *the notice itself* would have been the best evidence of its contents, if it had been produced. Being in writing, it was the only competent evidence of its contents, *unless a foundation had first been laid,* for the introduction of secondary evidence. No such foundation had been laid. There was no notice to produce. Upon what rule of evidence, then, could Mr. Latimer be called on to prove the contents of that notice? The objection, now relied on, is not to the *probative force* of his evidence; but to its *admissibility.* The Act of 1837, ch. 253, was a great relief to plaintiffs, in suits against endorsers, upon inland bills and notes. It made the protest *prima facie* evidence of the matters therein stated; but its contents, when offered in evidence, cannot be added to, or substracted from, by parol evidence. But plaintiffs may still show, by other proof, if they can, the material facts of due demand, non-payment and due notice. But such proof must be competent legal evidence. And the rule is stern and imperative, that you cannot give parol evidence of the contents of a written paper, without first laying a proper foundation for the introduction of the proposed secondary evidence. Hence, as the avowed purpose of offering the testimony of Mr. Latimer, was to prove that due notices of the dishonor of the notes were given, and that such notices contained the words, "payment therefor having been demanded and refused," the objection to his evidence was well taken, and ought to have been sustained. It was not an offer to prove, by direct evidence, *the facts* of demand, non-payment and due notice; but to prove the contents of the notice, so as to use *the notice* as evidence of those facts. *Orear and Berkley vs. McDonald, et al., Garnishees,* 9 *Gill,* 350; 2 *Phillips on Ev.,* 533, 536.

The defendant's prayer ought to have been granted. It asked the Court to decide on the sufficiency of the evidence, on the part of the plaintiff, to prove due notices of dishonor. The defendant had offered no proof. The only proof, then in the cause, were, the notarial certificate and the testimony of Mr. Latimer.

Now, the efficacy of the notarial certificate, in relation to notice, is settled by the express provision of the Code, and the decisions of this Court on the Act of 1837. It not only does *not* show that sufficient notice was given; but, on the contrary, *does* show that the notice given was *insufficient* to bind the defendant, as endorser. And what is the probative force of the testimony of Mr. Latimer? He does not *know* that any notice was sent to Mr. Griffith. It was the duty, he says, of the notary himself to deposit notices in the post office, and hence, he *infers* that they were sent. This is mere conjecture. This is not sufficient evidence that the notice was sent. *Hawkes, et al. vs. Salter,* 4 *Bing,* 715; *Toosey vs. Williams,* 1 *Moo. & Malkin,* 129; *Flack vs. Green,* 3 *G. & J.,* 474; *Lewis vs. Kramer & Rahn,* 3 *Md. Rep.,* 265; *Fulton vs. Maccracken,* 18 *Md. Rep.,* 530, 542; *Bell vs. The Hagerstown Bank,* 7 *Gill,* 222, 223.

But the instruction, prayed for by the defendant, was not limited to the *form* of the notices. It involved the *sending* of the notices. Of this fact, there is *no* proof, other than the notarial protest. The plaintiff is compelled to rely on it; and it shows that an *insufficient* notice was sent. It is evidence introduced by the plaintiff; and has, *by law,* a specific efficacy; and should not be countervailed by mere inference, or supposition; nor should such testimony, as offered, be submitted to a jury, as it would lead to speculation and conjecture. The rule is, if you rely on the notarial certificate as essential proof, you cannot discard any part. You may discard it *in toto ;* but if used at all, you cannot contradict it.

The great error, however, was in granting the plaintiff's prayer. The instruction is peremptory to the jury, that they

*must* find for the plaintiff, if they believe certain enumerated facts. The fact of *making* the note is not left to the jury. It is *assumed* by the Court. Now, however clear the proof may be, even in case of an express admission, yet an instruction is erroneous, which, *upon its face*, assumes any fact. *Ad questiones facti, respondent juratores.* So as to the endorsement of the note. It is *assumed* by the Court. This was error. The distinction between *pleading* and *evidence* must not be overlooked. Where any matter is confessed *in pleading*, it becomes part of the record, and is not in issue; but an admission at the trial, upon issue joined, is matter *in pais*, and must be submitted to the jury. *Ragan vs. Gaither*, 11 *G. & J.*, 479; *Charleston Ins. & Trust Co. vs. Corner*, 2 *Gill*, 426; *Brown vs. Ellicott*, 2 *Md. Rep.*, 82; *Boyd vs. McCann*, 10 *Md. Rep.*, 122.

*John P. Poe* and *Peter W. Crain*, for the appellee:

All the rulings of the Court below were correct. The handwriting of both maker and endorser being admitted, and Perrymansville being also admitted to have been at the time in question, the post office of the defendant, there could, of course, be no denial of the plaintiff's right to recover, provided he could prove, by admissible testimony, that due notices of the dishonor of the notes sued on had been mailed to the endorser. There is, therefore, in reality but one question in the case, viz: was such admissible evidence offered? If there were, then the rulings of the Court below, as given in the three exceptions now relied on by the appellant, were unquestionably correct. If there were not, it is equally clear that the Court below erred in all of them. The weight, value, credibility and effect of the evidence, were for the jury; its admissibility alone was for the Court. In considering this question, obviously the first inquiry is, what is the rule of law in such cases? By innumerable decisions of this Court, it is declared to be, that to justify the rejection of evidence tending to prove the point

at issue, the testimony must be of so slight and inconclusive a character, that no rational, well constructed mind could be led by it, and by inferences legally deducible from it, to the result sought to be reached; and again, that if any part of the evidence offered in a mass be admissible, it is error to reject the whole.    *Clarke's Adm'r vs. Marriott's Adm'r, 9 Gill,* 334; *Carroll's Lessee vs. The Granite Co.,* 11 *Md. Rep.,* 408; *Whiteford vs. Burckmyer and Adams,* 1 *Gill,* 137, 148; *Spring Garden Mutual Ins. Co. vs. Evans, use of Riley,* 9 *Md. Rep.,* 20.

Applying these plain, familiar principles to the case in hand, all difficulty immediately disappears.    The protests, it is conceded, prove demand upon and refusal by the maker Higinbotham, to pay all three of the notes upon the days of their respective maturity.    They also prove that on the same days notices were mailed to the appellant, at Perrymansville, his admitted post office, informing him that they "had not been paid, and that he would be held responsible for the payment thereof."    Unless the plaintiff could prove that the endorser was also duly notified, that demand had been made upon the maker, and payment refused, we concede he could not recover, and the whole effort, therefore, of the plaintiff was to establish that the notices as sent contained, in addition to the words stated in the protests, respectively, the further words "payment therefor having been demanded and refused."    This fact the counsel for the appellee maintain was established by evidence not merely admissible as tending to prove the point at issue, but absolutely conclusive.    That it was conclusive the verdict of the jury demonstrates.

The whole scope and object of the testimony of the witness Latimer, was to prove that the notices which the protests show to have been sent, embraced all which the protests state they contained, and the additional consistent words "payment therefor having been demanded and refused."

To the admissibility of this testimony it is objected, first, that there was no foundation laid for it by a notice to pro-

duce the notices of protest, the exact contents of which it was attempted to prove by parol; and secondly, that the evidence was inconsistent with and contradictory of the protests, and therefore inadmissible.

As to the first objection: a regular notice to produce the notices of protest, was served as far back as 1853, upon the then counsel of the appellant, Mr. Otho Scott, which notice is inadvertently omitted from the record. But if no such notice had been served and disregarded, still it is well settled that where the instrument whose contents are to be proved by parol is itself a notice, such as a notice of protest, no notice to produce is necessary as a preliminary to such parol evidence. *Atwell vs. Grant,* 11 *Md. Rep.,* 105.

As to the second objection, we insist that the additional words, "payment therefor having been demanded and refused," are neither inconsistent with or contradictory of the notices as recited in the protests. That such words are *per se* thus inconsistent or contradictory, can hardly be maintained, when it is considered that without them the notices are deficient in point of law; for that can hardly be inconsistent with or contradictory of a legal instrument, without which such legal instrument is a nullity.

They are, in short, simply additional words, which are not only not negatived by anything in the protests, but, on the contrary, rather demanded by them, and thus directly within the rule as declared by this Court in *Sasscer vs. The Farmers' Bank,* 4 *Md. Rep.,* 409; *Graham vs. Sangston,* 1 *Md. Rep.,* 59; *Hunter vs. Van Bomhorst & Co,* 1 *Md. Rep.,* 504.

The counsel for the appellee supposed that since the decision in *Sasscer vs. The Farmers' Bank,* 4 *Md. Rep.,* 409, 419, this question had been set at rest, and but for the effort on the other side to break the force of that decision, they would have contented themselves with simply a reference to it. Notwithstanding the argument of the counsel for the appellant, they still respectfully submit that it is conclusive of the matter. But if it be conceded that the objections of the appellant are

tenable, still the rulings of the Court in the second, third and fourth exceptions were correct, because the evidence *as a whole* was objected to; and some portions of it being unquestionably admissible, it would clearly have been error to reject the whole. *Carroll's Lessee vs. The Granite Co.,* 11 *Md. Rep.,* 408.

That the evidence of Mr. Latimer, was legally sufficient, see *Fulton vs. Maccracken,* 18 *Md. Rep.,* 542; *Bell vs. The Hagerstown Bank,* 7 *Gill,* 222, 226.

The prayer of the plaintiff is said to be objectionable because it assumes the making of the notes. It will be found on examination, however, that no such assumption is contained in it; but if it were, it is only of a fact admitted by the defendant's counsel, in writing, and which the jury could not find against. This is well settled practice. See also *Act of* 1862, *ch.* 154; *Walters' Lessee vs. Riggin,* 19 *Md. Rep.,* 551, 552, *and cases there cited.*

ROBINSON J., delivered the opinion of this Court.

It was admitted by the appellant's counsel that the protests were legal and competent to prove demand upon and refusal by the maker. The first exception was therefore abandoned. The objections to the evidence of Latimer, raised by the second bill of exceptions cannot be sustained. The only question at issue in the trial below, was whether the defendant had received due notice of the dishonor of the notes. It is conceded that the protests are insufficient to prove notice, because they do not inform the endorser, that payment was *demanded and refused.* The plaintiff must therefore invoke the aid of other evidence, or he must fail in fixing the liability of the endorser. In this State the law is well settled, that the holder may supply any omission in the notarial protest, however material, by independent proof, provided it be not inconsistent with or contradictory of that contained in the protest. In *Hunter vs. Van Bomhorst,* 1 *Md. Rep.,* 504, the notarial certificate was insufficient, because it did not allege that the notes were at the bank, on the day of maturity, and

this omission, fatal in itself, was supplied by other testimony. The Court said it was "no contradiction of the evidence contained in the protest, but merely enlarges it, by supplying material omissions." And in *Nailor vs. Bowie*, 3 *Md. Rep.*, 252, the protest was defective because, as in the case now before us, it did not inform the endorser of a demand and refusal, and yet the Court held that the omission could have been supplied by other evidence. In these cases, the notarial certificates were offered in evidence by the plaintiffs. In the subsequent case of *Sasscer vs. The Farmers' Bank*, the protests were also insufficient, inasmuch as they did not aver *non-payment* of the notes by the maker. Objection was made as in this case, to the admissibility of evidence to cure this defect, upon the ground that having relied upon the notarial protest to prove notice, the plaintiff could not offer any evidence adding to, or contradicting the same. But this Court held that the evidence did not contradict the record, and Judge MASON said that "in the case of *Graham vs. Sangston*, 1 *Md. Rep.*, 59, and *Hunter vs. Van Bomhorst & Co.*, ibid, 504, this Court recognized the right of the plaintiff to offer evidence of notice, in addition to, if not inconsistent with that contained in the protest;" "and, therefore, when any material circumstance of the transaction has been omitted in the record, it is but proper that the omission should be supplied." It was insisted upon by the appellant's counsel, that there was a marked distinction between Sasscer's case and the one now before the Court, because in the former, the notarial protests were not offered as evidence *per se* by the plaintiff. But the Court held in that case, that whether they were offered in evidence, or for the purpose of refreshing the recollection of the witness, that having placed them in the hands of the notary, and their contents having been submitted to the jury, whether by the plaintiffs or defendants, they thereby became evidence in the cause, and entitled to as much weight as if they had been originally offered for that purpose." In this case, the testimony of Latimer does not contradict, but merely proves facts

in addition to those disclosed by the protests, and was therefore admissible.

The defendant's prayer in the third bill of exceptions was properly refused. It called upon the Court to say that the evidence in the cause was not sufficient to prove due notice of the dishonor of the notes. There was evidence in the cause, derived from a legal source, pertinent and tending to prove the issue, and it would have been an error in the Court, to have granted the prayer. The notary was dead, and as in the case of *Brandt, surviving partner of Basil R. Spalding & Co., vs. Griffith's Ex'rs, ante* 436, the notarial certificate was defective. The witness Latimer, was the chief clerk to the notary, and he proves that when he went with Mr. Williams, the late notary in 1848, the printed form of notices to endorsers did not contain the words *"payment therefor having been demanded and refused;"* but that in consequence of a decision in New York, a change was made in the form of the notices, and these words added. That all the old forms were destroyed, and that in October, 1851, when these notes became due, but one form of notice was used, and that contained the words "payment therefor having been demanded and refused." That he remembers perfectly well the Higinbotham notes, because he and the other clerks were informed that there was a question of fraud in regard to them, and were therefore careful in protesting them. He identifies the notes, as having been handed to him for protest, by his private mark upon them, and that he is confident, the notices made out by him contained the words "payment therefor having been demanded and refused." This evidence, if believed by the jury, in addition to the proof in the notarial certificate, was in our opinion, *legally* sufficient to prove due notice of the dishonor of the notes. We also concur with the Court in granting the plaintiff's prayer. The execution and endorsement of the notes being admitted by the defendant, the Court committed no error in assuming the facts to be true. *Waters' Lessee vs.*

*Riggin,* 19 *Md. Rep.,* 536.    Moreover, if defective in this respect, it does not appear from the record, that the objection was made in the Court below.    *Act of* 1862, *ch.* 154.

Finding no error in the ruling of the Court, we affirm the judgment.

*Judgment affirmed.*