OBERT, *Appellant*, v. DUNN *et al.**

Division Two, July 6, 1897.

1. **Pleading**: DAMAGE TO WALL BY EXCAVATIONS: EVIDENCE. In an action against an adjoining owner for damages to plaintiff's house caused by an excavation for cellars, it is not proper to admit evidence showing that it was usual in like circumstances to excavate and wall up in sections, when the petition contains no charge that it was defendant's duty to excavate and wall up in sections and that he was negligent in not doing so.

2. **Damages to Walls by Excavations on Adjoining Lot.** The owner of a house and lot is entitled only to *lateral* support from the lot of an adjoining owner for the soil to his lot in a natural state, and not to support for a building placed on his land. So that if the adjoining owner and his independent contractor, in excavating on his land for a cellar exercise ordinary care and skill in the digging, and if, after due notice to the owner of his intention to make the excavation extend lower than the foundation of his wall, the owner of the wall does not underpin it and takes no adequate precaution to protect his house from damage and danger, the defendants are not liable for damages, although in digging on their own land they dig so near the foundation of the house of their neighbor as to cause it to crack and fall down.

3. **Evidence**: CRUMBLING OF EARTH UNDER A WALL: JUDICIAL NOTICE. The court will take judicial notice that the earth under a foundation of a wall will crack and crumble away after an excavation immediately adjoining thereto has been dug down five feet lower than the foundation.

4. **Excavations**: DUTY TO ADJOINING OWNERS. It is not the duty of the owner of a lot or of the contractor who has agreed to put a house thereon to support the lot of a neighbor when incumbered by the weight of a building thereon, nor are they under obligation to excavate the foundation for their cellar by piecemeal, nor to build their wall in sections.

*NOTE.—It will be noted that this case repudiates the rule announced in *Larson v. Railroad*, 110 Mo. 234. In that case SHERWOOD, C. J., and GANTT, J., dissented.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*B. Schnurmacher* for appellant.

(1) A lot of land in its natural state, and unimproved by buildings or artificial weight, is entitled to lateral support from an adjoining lot; and if the co-terminous owner should withdraw such support by excavating so close to the dividing line as to cause the earth to slip, he will be liable in damages therefor. *Charless v. Rankin,* 22 Mo. 573; *Larson v. Railroad,* 110 Mo. 234; Washburn's Easements and Serv., *p. 430. (2) And even where the land is burdened with buildings, the adjoining proprietor in excavating must use reasonable and ordinary care, and is liable for any injury that may result from a lack of it. *Larson v. Railroad, supra;* Washburn, *p. 437; *City of Quincy v. Jones,* 76 Ill. 231; *Foley v. Wyeth,* 2 Allen, 131. (3) To establish this standard of care, it was therefore proper in this case to show how excavations like the one in question were generally made; and it was error on the part of the court to exclude this evidence. *Shrieve v. Stokes,* 8 B. Mon. 453; *Monahan v. K. C. Clay and Coal Co.,* 58 Mo. App. 68. (4) Therefore, if it was the prevailing and general practice in the city of St. Louis to excavate in sections; that is, to remove a section of earth next to a building, and after filling that with masonry work, to remove another section, fill in, and so on, then such method was the standard and measure of ordinary care, and it was error in the court to exclude the testimony tending to show that such work was generally done in sections. *Block v. Haseltine,* 3 Ind. App. 491; *Lasala v. Holbrook,* 4 Paige, 169.

*Kehr & Tittmann* for respondents.

(1) Plaintiff's building was not entitled to lateral support from the lot of defendants. It was the right of defendants to excavate their lot, and if the excavation was so made that it would not have caused any appreciable damage to the plaintiff's lot in its natural state, that is, without a house on it, then there was no negligence in the exercise of the right. *Charless v. Rankin*, 22 Mo. 566; *Larson v. Metropolitan Co.*, 110 Mo. 234; *Eads v. Gains*, 58 Mo. App. 586–591; 1 Thompson on Neligence, sec. 1. p. 275; 2 Washburn on Real Prop. [5 Ed.], 380, 381, 382; Washburn's Easements and Servitudes [4 Ed.], top page 594, 595; *Lasala v. Holbrook*, 4 Paige, 169; *Thurston v. Hancock*, 12 Mass. 220; *Gilmore v. Driscoll*, 122 Mass. 201; *Dority v. Rapp*, 72 N. Y. 307; *Booth v. Railroad*, 140 N. Y. 267; *Ketcham v. Newman*, 141 N. Y. 205; *Moody v. McClelland*, 39 Ala. 45. (2) Having been notified of defendants' intention to excavate their lot, it became plaintiff's duty to shore up, support or otherwise protect his own building against probable danger. *Peyton v. Mayor of London*, 9 Barn. and Cressw. 725. (3) As plaintiff's house was not entitled to lateral support from the adjoining lot, defendants were not bound either to excavate or build up in sections, and failure so to do is not negligence. *Charless v. Rankin*, 22 Mo. 566; *Larson v. Metropolitan Co.*, 110 Mo. 234. Nor does the petition claim it as a ground of negligence. *Waldhier v. Railroad*, 71 Mo. 514; *Smith v. Sims*, 77 Mo. 274. The court's ruling, therefore, on the evidence, was correct.

SHERWOOD, J.—Action for damages bottomed upon the fall of plaintiff's dwelling house, caused by an

excavation made for a cellar on the ground of the defendants Luecke.

The substantial portion of the petition is the following: "That on or about the 27th day of March, 1894, the defendants Luecke were together the owners of a certain lot of ground immediately adjoining that of the plaintiff on the west, and that on or about said day the defendants Dunn and the defendants Luecke began to make and excavate a large and deep hole, intended for a cellar, upon the premises of said defendants Luecke, and continued to excavate until on or about April 5, 1894; that said excavating and digging was done in a careless and negligent manner by the defendants, and that the ground was so excavated that portions of the soil belonging to plaintiff's lot were caused to become detached and to fall, greatly undermining and weakening the foundation supporting plaintiff's house. And that defendants excavated over the line of the lot belonging to the defendants Luecke, and into the lot belonging to plaintiff; that the foundations of plaintiff's said house were exposed to great danger, and that it was the duty of defendants not to leave the same unnecessarily exposed, or exposed for an unnecessary length of time, but in disregard of their duty the defendants, after having made said excavation, commenced to build the masonry foundations of a house in said excavation, working only upon the north, south, and west sides, and not undertaking to build alongside the plaintiff's house at all. That the foundation wall of plaintiff's house was thus carelessly and negligently, and without any regard whatever by the defendants to the danger in which plaintiff's house was placed, left exposed for a period of ten full days after said excavation had been completed, during which time the defendants allowed their said excavation to become flooded with water, which ran

against and upon the soil supporting plaintiff's house, greatly weakening and undermining such support, until on or about the 16th day of April, 1894, when, in direct and immediate consequence of the wrongful and careless conduct and acts of the defendants, the support of plaintiff's house entirely gave way, and said house, together with all of the furniture and other property of plaintiff contained therein, fell into said excavation and was completely wrecked, demolished, and destroyed. That by reason of the premises plaintiff sustained damage in the sum of six thousand dollars, for which, with costs, he prays judgment against defendants.''

It will be noted that though various grounds of negligence are specified in the petition, yet that no claim is made therein that it was the duty of defendants to excavate or wall up in sections, or that failure to do so was negligence.

The joint answer of defendants, after suitable denials, states that the Lueckes were the owners of the ground adjoining that of plaintiff, and that they employed the Dunns as independent contractors and builders to erect for them on their ground a building according to plans and specifications, and that thereafter the Dunns entered on said premises and had sole control thereof and of the work to be done thereon in pursuance of the contract for the erection of the building they had agreed to build. The answer, among other things, states: ''That on or about the 26th day of March, 1894, the defendants Dunn Brothers gave the plaintiff Obert notice of their intention to make the excavation for the cellar on the premises of the defendants Luecke and that such excavation would extend about seven feet below the curb of Lynch street, and would be likely to go about four feet below the foundation of plaintiff's house. And thereupon it

became and was the duty of the plaintiff to underpin, sustain or otherwise properly protect his building, which he failed to do, and that the loss and injury complained of by plaintiff is the result of his failure or neglect to underpin, sustain or properly protect his said building.''

It further alleges plaintiff's duty, under an ordinance of the city of St. Louis, at his own cost, to underpin, sustain, and protect his building and avers his failure to do so.

The reply avers that ''as soon as he became aware of the fact that defendants intended to excavate on the lot of the defendants Luecke, this plaintiff did, in a careful and proper manner, protect and support his building and the walls thereof, but that despite all proper care and precaution on his own part, his said building was caused to fall by reason of the carelessness and negligence of defendants, as already fully set forth in the petition.''

The evidence offered on the trial is in substance the following:   Obert, plaintiff, and the Lueckes owned adjoining lots on Lynch street in St. Louis.   The soil on both lots was a natural bank of clay.   The Luecke lot is west of the Obert lot.   Originally both lots were considerably above grade.   Plaintiff in his testimony describes them as on a hill.   The house on his lot was built in 1886 on the embankment.   It was a two-story mansard roof brick building; fronting eighteen feet on a twenty-five foot lot.   Its western wall was built to the very edge of the lot.   In 1892 or 1893, the Lueckes graded their lot to the level of Lynch street. From that time forward plaintiff's western cellar wall was about two and one half feet below ground.   In March, 1894, the Lueckes let the contract for the erection of a building on their lot.   Their plans of improvement contemplated two cellar excavations, one on

the rear of the lot, adjoining plaintiff's woodshed and one toward the front adjoining plaintiff's house. The Luecke building was to be erected according to plans and specifications, and they let the entire contract to Dunn Brothers, a firm of contractors and builders, who took charge of the work as independent contractors, and, in turn, sub-let to Charles Taas, the contract for excavating the premises. Taas was paid by the yard, and was to excavate whatever was necessary according to the plans and specifications, using his own judgment as to how it was to be done. On the twenty-sixth of March, 1894, Dunn Brothers gave the plaintiff notice in writing that they would commence, on March 27, 1894, to excavate on the Luecke lot, and would excavate to a depth of about seven feet below the curb on Lynch street, and that it would be necessary for him to protect his building, inasmuch as the excavation would go about four feet below the depth of his cellar wall. In consequence of the notice, Obert called on Dunn on the following day, at the latter's office and talked to him about his house; asked him what to do, and, Dunn told him to underpin his wall, that is, continue it to the depth of the new excavation. Some time afterward Dunn went with Obert into the latter's cellar to examine it, and as an instance and illustration of underpinning, called his attention to a house in the neighborhood, alongside of which a deep excavation had been made for an alley, and which had been successfully underpinned. Obert wanted to know what it would cost to underpin his wall. Dunn said it would cost $137.50, and afterward told him it could be done for $126. Dunn is a carpenter and does not do masonry work himself, but lets it to others. Obert wanted cheaper work and said he would see another party. On another occasion Dunn met Obert on the pavement in front of the premises, and told him his

house would be injured unless he protected it and asked him what he intended to do about it, and Obert said he had let it to Boettinger. The cellar on the north end of the lot was first excavated. This took four or five days and was free from mishap. The excavator then began to dig on the front part of the lot, but left an embankment or rim of earth along Obert's wall a foot wide at the top and slanting down to a width of three feet at the bottom. He completed the excavation, except the removal of this rim or embankment of earth, and the masons began to put up the walls on the other sides of the lot. Up to this time Obert had done nothing to protect his house. Then two deputies from the building commissioner's office called on him on two successive days and told him he must protect his house. Still he did nothing. Finally on the seventh of April, the building commissioner himself had a written notice served on Obert, informing him that his house was in danger. Thereupon he got Boettinger, a carpenter, on the ninth day of April, to put up four braces against his west wall. These braces were pieces of six by six inch pine timber, twenty-six feet long, placed in the excavation in the Luecke lot, and resting in holes punched in Obert's wall near the second tier of joists about twenty-two or twenty-three feet above the bottom of the excavation. And this is all that Obert ever did to protect his house. It took Boettinger about three hours to put up the braces, and the cost of the work and material was $10 or $12. Underpinning would have cost $126.

On the eleventh or twelfth of April Taas called on Obert and asked him whether he had protected his house so that he, Taas, could take away the ground still standing along the wall. Obert said Boettinger had protected his house and that he, Taas, could dig out the ground. The next morning Taas sent men to

take away a part of the embankment. His men were engaged in removing the balance on the day the house fell, which was April 16, 1894. Obert came home at noon of that day for dinner. He saw that the ground below his wall was cracked and was giving away. He did nothing further to protect his house, claiming that it was protected by the braces, and went back to his work at the brewery. Taas' men reported that the ground was cracking. Between 2 and 3 o'clock P. M. the ground under Obert's wall gave way to the west, and the lower part of his wall slipped into Luecke's excavation, and a few moments later the house fell. The embankment had been left for the protection of Obert's wall, and Dunn paid Taas something extra for permitting it to remain there. Taas did not touch it until Obert told him he could take it away.

Obert did not say that the excavator dug over his line. He put it in these words: "It looked as if they had dug under my foundation wall about an inch." He admits that he never had his lot surveyed. The lines of excavation were staked off for Taas on the Luecke lot, and he states positively that he did not dig over plaintiff's line, and Taas was one of plaintiff's witnesses. The evidence also showed that plaintiff's wall extended about two feet below the curb of the street and was placed upon the very edge of his line. The defendants' excavation, immediately adjoining, was seven feet deep. Plaintiff's wall was forty-five feet long, and after defendant's excavation was completed, had nothing to hold it except the four braces let into it near the second tier of joists. The evidence shows that braces simply steady the wall, hold it in position, but have no effect to sustain the wall below the point of contact. Plaintiff's wall, therefore, below the second tier of joists had nothing whatever to hold it except the ground on which it rested, with an excavation

immediately adjoining extending five feet lower. The lateral support of the adjoining lot being removed, the ground on which plaintiff's wall rested was insufficient, without other aid, to support the wall. The weight of the wall caused the ground under it to bulge out and fall into the excavation; thereupon the lower part of the wall fell and finally the house followed. The testimony was uniform that the proper way to support a wall under the circumstances, was either to underpin it or to "needle" it, or to scaffold the various floors on the inside of the building.

At the close of plaintiff's case, the court instructed the jury that the plaintiff was not entitled to recover against the Lueckes or either of them, and by a separate instruction gave them the same directions as to the Dunns. Thereupon plaintiff took a nonsuit. The ruling of the trial court, which resulted in plaintiff taking a nonsuit, is thus presented for consideration.

One of the causes leading to the taking of the nonsuit was the refusal of the court to permit introduction of evidence showing that it was usual in like circumstances as presented in this case to excavate and to wall up in sections. This proposed evidence was properly refused admittance on the ground of no such charge of negligence in the petition. *Waldhier v. Railroad,* 71 Mo. 514; *State ex rel. v. Martin,* 77 Mo. *loc. cit.* 676; *Schneider v. Railroad,* 75 Mo. 295; *Ely v. Railroad,* 77 Mo. 34; *Current v. Railroad,* 86 Mo. *loc. cit.* 67; *Abbott v. Railroad,* 83 Mo. 271.

If, as shown by the authorities, plaintiff was only entitled to lateral support from the lot of defendants for the soil of his lot in a natural state, and not to such support for a building placed on his land, and if, as also shown by the authorities, defendants when engaged in excavating on their own land for a cellar, and in the exercise of ordinary care and skill, and after

Obert v. Dunn.

due notice to the owner are not liable to such owner, though in digging on their own land they dig so near the foundation of the house of their neighbor as to cause it to crack and settle or even fall down, then it must follow that the only question in the case is whether the digging was done with ordinary care and skill. On this point there is really no evidence to show that the work was done otherwise than in an ordinarily skillful manner. It is true, plaintiff in testifying, states that: "It looked as if they dug under my foundation wall about an inch;" but there is no evidence that defendants did so, and there is no evidence that plaintiff's west line was ever surveyed, and besides Taas, who did the excavating and was plaintiff's witness, testifies that he did not dig over the line on to plaintiff's lot, and besides that it must readily be admitted that after the earth has been dug further down than the foundation wall of another building, that the earth under such foundation, unless the building be properly underpinned, will naturally crack and crumble away from the foundation thus exposed, and this is a matter of such common knowledge that we take judicial notice of it.

Inasmuch as defendants owed plaintiff's lot no duty to support it when incumbered by the weight of his building, it must needs follow that defendants were under no obligation either to excavate the foundation for their cellar by piecemeal, or to build their wall in sections.

This conclusion is sustained by abundant authority cited in the brief of counsel for defendants.

For these reasons judgment affirmed. All concur.