# CARPENTER, Respondent, v. RELIANCE REAL-TY COMPANY, et al., Appellants.

### St. Louis Court of Appeals, December 15, 1903.

1. **LATERAL SUPPORT: Pertains to Ground Only: Excavation: Notice to Owner of Buildings.** The right of the owner of a lot of ground to lateral support pertains only to the ground itself in its natural state, not to encumbering buildings or improvements, and, on receipt of notice of another's intention to excavate a contiguous lot, responsibility for the safety of the buildings which are threatened by the intended excavation, devolves upon their owner.

2. ———: ———: **Prescriptive Right.** The owner of buildings can not acquire a prescriptive right to lateral support for them.

3. ———: ———: **Duty of One Excavating: Cost of Shoring on Owner of Building.** It is the duty of one about to excavate his lot to give notice to the owners of adjacent buildings, and to use reasonable care in excavating so as to prevent injury; the cost of shoring up and taking precautions to prevent injury to adjacent buildings from such excavating falls upon the owner of such buildings.

4. ———: ———: **Excavations: Rights of Owner of the Soil.** A proprietor has dominion not only over the surface of the land he owns, but over the space above and below the surface to any extent he chooses to occupy it, and his duties when excavating are not increased by any increase of depth he may choose to dig.

5. **COMMON LAW: Changed Only by Statute.** A rule of common law can only be changed by the law-making body of the State; a city has no power to change the common law unless such power is expressly granted to it by the legislature of the State, or is fairly implied from the powers expressly granted.

6. ———: ———: **Lateral Support: Police Regulation.** A clause of the charter of a city, giving the municipal assembly authority "to provide for the safe construction, inspection and repairs of all private and public buildings within the city,"

does not authorize the municipal assembly of such city to change the common law with relations to lateral suport, and an ordinance of such city which makes it the duty of a person making an excavation below a certain depth to preserve any contiguous legal wall or walls from injury, and protect them at his own cost, is invalid because inconsistent with the laws of the State.

7. **LATERAL SUPPORT: Notice of Intention to Excavate: Ordinance: Estoppel.** Where a constrution company about to excavate, gave notice to the owner of adjacent buildings, of such intention, and called his attention to such an ordinance, it is not thereby estopped to claim  such ordinance invalid.

8. **————: Bond of Contractor: Excavating.** Where a construction company undertaking to construct a building under a contract with the owner, gave a bond to protect adjoining property, such bond is not made for the benefit of the adjacent owner so as to give him a cause of action against the construction company to enjoin it from injuring his walls by making the excavation.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

REVERSED AND REMANDED.

*Collins & Chappell* for appellant.

(1)   That portion of the building ordinance of the city of St. Louis providing that whenever an excavation to the bottom of a footing for a business building is carried to a greater depth than fifteen feet below the curb level, it shall be the duty of the person making or causing said excavation to be made to preserve any contiguous legal wall or walls from injury and sustain, protect and underpin the same is invalid, for the reason that same is an attempt to exercise a legislative function not delegated to municipal corporations.   Charles v. Rankin, 22 Mo. 560; Busby v. Holthaus, 46 Mo. 161; Victor Mining Co. v. Mining Co., 50 Mo. App. 529; Partridge v. Scott, 3 Mees & Wels. (Exch. Rep.) 220; Eads v.

Gains, 58 Mo. App. 586; Norder v. City, 97 Mo. 537; Senn v. Railroad, 108 Mo. 142; Moran v. Palace Car Co., 134 Mo. 641; Byington v. Railroad, 147 Mo. 673; Badgley v. City, 149 Mo. 122; Anderson v. Railroad, 161 Mo. 411. (2) We submit that the respondent can not rely upon any rights he may have, if, any, under and by virtue of the contract between the Hill-O'Meara Construction Company and the Reliance Realty Company for the following reasons: First, the respondent's petition does not count upon any rights under said contract but solely upon the building ordinance of the city of St. Louis. No issue was presented in the pleadings or determined by the court below touching respondent's rights under said contract. It is too late for respondent to raise the question of his rights under the said contract for the first time after the case has reached the appellate court. Hollman v. Lange, 143 Mo. 100; Walker v. Owens, 79 Mo. 563; Evans v. Kunze, 128 Mo. 670; Tomlinson v. Ellison, 104 Mo. 105; Hogan v. Brady, 155 Mo. 659; Huling v. Bondera F. S. Co., 87 Mo. App. 349; Trigg v. Taylor, 27 Mo. 245; Hart v. Leete, 104 Mo. 315; Minton v. Stute, 125 Mo. 181; Whetstone v. Shaw, 70 Mo. 575; Newham v. Kenton, 79 Mo. 382; Goodman v. Crowley, 161 Mo. 657. Second, the plaintiff in this action could not have maintained this action by relying upon the contract between the Hill-O'Meara Construction Company and the Reliance Realty Company in any event, for the reason that the said contract, in so far as it pertains to plaintiff's alleged rights, is one of indemnity only. 16 Am. and Eng. Ency. of Law (2d Ed.), 176; Ewing v. O'Rielly, 34 Mo. 113; K. C. ex rel. Blumb v. O'Connell, 99 Mo. 357; Ham v. Hill, 29 Mo. 275; Union Natl. Bank v. Rich, 106 Mich. 319; Taylor v. Duner, 80 Tex. 652; French v. Vix, 143 N. Y. 90; Turk v. Ridge, 41 N. Y. 201; Black's Law Dictionary; 16 Am. and Eng. Ency. of Law (2 Ed.), 168. Third, a cause of action had not arisen or accrued on the contract above mentioned in favor of any one at the time plaintiff com-

menced this action, for the reason that neither the loss from which the realty company was to be saved harmless nor the liability from which it was to be protected had come into existence. Stewart v. Thomas, 45 Mo. 42; Railroad v. News Co., 151 Mo. 373; French .v. Vix, 143 N. Y. 90; Bank v. Grof, 101 Mich. 27; Koken Iron Works v. Livers, 147 Mo. 580; Markel v. Telegraph Co., 19 Mo. App. 80; Porter v. Woods, 138 Mo. 539; Devers v. Howard, 144 Mo. 671. Fourth, the right of a third person to maintain an action upon a promise made to another for his benefit relates exclusively to matters of contract. It was first limited to promises contained in simple contracts. Bank v. Benoist, 10 Mo. 519; Robbins v. Ayres, 10 Mo. 538; Meyer v. Lowell, 44 Mo. 328; Flanagan v. Hutchinson, 47 Mo. 237. It was subsequently extended so as to apply to contracts under seal. Rogers v. Goswell, 51 Mo. 466; Fitzgerald v. Barker, 70 Mo. 685; State v. Railroad, 125 Mo. 596. Fifth, Plaintiff can not maintain his action on the city ordinance in this case on the theory that there is any analogy between such ordinance and those ordinances on which laborers and materialmen are permitted to maintain suits for labor and material. City to use v. Von Phul, 133 Mo. 561; Devers v. Howard, 144 Mo. 671; St. Louis v. Lumber Co., 114 Mo. 74; St. Louis v. Keane, 27 Mo. App. 642; Howsman v. Waterworks, 119 Mo. 304; Luthy v. Woods, 6 Mo. App. 67; City of Kansas v. O'Connell, 99 Mo. 357; New Haven v. Railroad, 62 Conn. 253; School Board v. Wood, 77 Mo. 197.

*T. K. Skinker* for respondent.

(1) The Hill-O'Meara Construction Company, having expressly agreed to protect the adjoining buildings, the plaintiff, as owner of these buildings, was entitled to insist upon the performance of that agreement, and as that company when the suit was brought, was in the attitude of refusing to perform, the plaintiff was en-

titled to the injunction. Beattie Mfg. Co. v. Gerardi, 166 Mo. 142; Crone v. Stinde, 156 Mo. 262; Fitzgerald v. Barker, 70 Mo. 685; Rogers v. Gosnell, 58 Mo. 589; Porter v. Woods, 138 Mo. 539, 554; St. Louis v. Von Phul, 133 Mo. 561, 574. (2) The Reliance Company, according to many authorities, was itself bound to protect respondent's walls. Casselberry v. Ames, 13 Mo. App. 575; Charless v. Rankin, 20 Mo. 566, 571; Gale & Whatley on Easements, page 218; Washburn on Easements (4 Ed.), side page 436; Lasala v. Holbrook, 4 Paige 169; McGuire v. Grant, 25 N. J. L. 356; Thurston v. Hancock, 12 Mass. 226, 231; Gilmore v. Driscoll, 122 Mass. 199; Whitcomb v. Railroad, 25 Vt. 49, 63. (3) It is immaterial that this was not set up in the petition as ground of recovery. The judgment was for the right party. Rev. Stat., sec. 865; Cass County v. Bank, 157 Mo. 133. (4) The plaintiff was entitled to the injunction under section 73, of ordinance No. 18,964, of the city of St. Louis. Appellants, before the suit, claimed under that section of the ordinance, and are, therefore, bound by it. Bensieck v. Cook, 110 Mo. 173; Hudson v. Wabash Railroad, 101 Mo. 13; Hilz v. Railway, 101 Mo. 36; Harrington v. Sedalia, 98 Mo. 583; Brown v. Bowen, 90 Mo. 184; Gale v. Ins. Co., 33 Mo. App. 664. (5) It is not the rule in this State that a municipal corporation may not create civil rights enforcible between private parties. Jackson v. Railroad, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 246; St. Louis City Charter, Art. 3, sec. 26, par. 12; 2 R. S. 1899, p. 2488.

GOODE, J.—The Reliance Realty Company and the Hill-O'Meara Construction Company are corporations. The former owns a lot on the northeast corner of Olive and Sixth streets in the city of St. Louis, which fronts fifty feet on the north line of Olive street and extends north 114 feet along the east line of Sixth. The plaintiff, James M. Carpenter, owns two lots adjoining the Realty Company's lot. One of them fronts on the

east side of Sixth street and is contiguous to the Realty Company's lot on the north; the other is immediately east of the lot of the Realty Company. So the two surround the Realty Company's lot on the north and east sides.

In 1898 Carpenter had a building on his Sixth street lot, three stories high for a distance of thirty feet from the front and thence two stories high the further distance of twenty feet. The foundation walls under the three-story portion of that building were of stone and extended eight feet below the level of the curb on Sixth street. The foundation under the two-story part extended two and one-half feet below said level and below the surface of the ground. On plaintiff's east lot, to-wit, the one fronting on the north side of Olive street, he had a building of brick and iron, four stories high for a depth of eighty feet and one story high the further depth of thirty-four feet. The west wall of that building, contiguous to the Realty Company's lot, was of brick and the foundation for a depth of eleven feet, was of brick and twenty-eight inches thick and for the further depth of one foot was three feet thick and laid in hydraulic cement mortar. Both the buildings are alleged to have been old, but their age is not stated in the evidence. During said year the Reliance Realty Company began to improve its lot, the purpose being to erect thereon a ten-story office building of the steel construction type, and such an edifice was in fact erected and is now known as the Carleton Building. In making the improvements, it was necessary to excavate the Realty Company's lot to the depth of eighteen feet or more in order to put in a basement and a foundation strong enough to uphold the lofty superstructure intended to be erected. As this excavation would penetrate the earth below and immediately adjacent to the foundations of the plaintiff's two buildings, measures to insure the safety of the foundations were required. With that end in view the Hill-O'Meara Construction Company, to whom the con-

tract for the erection of the Carleton Building had been
let by the Reliance Realty Company, delivered a written
notice to the plaintiff on November 8, 1898, telling him it
was the intention of the Construction Company to make
an excavation on the Realty Company's lot to a depth
of fifteen feet below the curb level and notifying the
plaintiff to take such steps as he saw fit to sustain, pro-
tect and underpin his contiguous walls so as to preserve
them from injury. The notice called plaintiff's atten-
tion to section 73, of ordinance No. 18964, of the munici-
pal assembly of the city of St. Louis, approved April 7,
1897. That ordinance is now section 106, of the munici-
pal code of 1901, and reads as follows:

"The legal depth for excavations to the bottoms of
footing shall be nine feet for dwellings and fifteen feet
for business buildings—to be measured from the curb
level on the party line. Whenever an excavation shall
be carried to a greater depth than the legal depth above
given, it shall be the duty of the person making or caus-
ing such excavation to be made to preserve any contig-
uous legal wall or walls from injury and sustain, pro-
tect and underpin the same at his own cost and expense,
so that the said wall or walls shall be and remain practi-
cally as safe as before such excavation was commenced.
He shall give timely written notice to adjoining property
owners of his intention to do so, and adjoining property
owners shall permit the occupancy of their ground and
buildings so that their walls may be underpinned and
sustained. If such excavation shall not be carried to a
depth greater than the legal depth above given, the
owner or owners of such adjoining or contiguous wall
or walls shall preserve their walls from injury and so
sustain, protect and underpin the same at their own cost
and expense that said wall or walls shall be and remain
as safe as before such excavation was commenced, and
said owner or owners of adjoining or contiguous wall
or walls shall be permitted to enter upon the premises

where such excavation is being made for that purpose, when necessary.''

On November 9, Carpenter replied to the notice of the Hill-O'Meara Construction Company, saying that the notice stated the excavation would be made to a depth of fifteen feet along both of his lines; but that he had seen the plans and specifications for the new building and they called for an excavation of eighteen feet; that inasmuch as the notice did not explicitly declare the excavation would be limited to fifteen feet, he asked for information as to the full depth intended to be excavated. He also called the attention of the Construction Company to the aforesaid municipal ordinance and said if the Construction Company would inform him that it did not intend to dig deeper than fifteen feet, he would proceed, without further delay, to protect his walls; otherwise he would expect the Construction Company to protect them. No reply was made to this letter, and on November 17, Carpenter filed a petition in the circuit court of the city of St. Louis against the Reliance Realty Company and its officers and the Hill-O'Meara Construction Company and its officers, in which he averred that the defendants were about to excavate to a depth of eighteen feet and asked that they be restrained from proceeding with the work until they had, at their own cost and expense, protected and underpinned his walls so as to preserve them from injury. The petition stated that plaintiff's buildings were occupied by tenants; that the proposed excavation endangered the buildings; that the defendants, in disregard of their duty, had refused to protect his walls at their own cost and expense, and if they were allowed to proceed without providing adequate safeguards, there was great danger to the lives and limbs of plaintiff's tenants and of irreparable damage to his buildings. A bond was given and a temporary restraining order granted. The order enjoined the defendants, their agents and servants from making any further excavation on the Reliance Realty Company's

lot without, at their own expense, sustaining, protecting, and underpinning plaintiff's walls contiguous to the Realty Company's lot on the east and north, so as to preserve said walls from injury and so that they would remain practically as safe as before defendants commenced to dig.

Answers were filed by the Hill-O'Meara Construction Company and its officers, admitting plaintiff's ownership of the two lots; that the defendant corporation, when this suit was instituted, was in possession of the Realty Company's lot, and denying the other allegations of the petition. The Reliance Realty Company answered that on the sixth day of October, 1898, it had let the contract for the erection of a ten-story building to the Hill-O'Meara Construction Company and that the Construction Company had entered the premises as an independent contractor, with the sole and absolute control thereof; that the Construction Company was not the agent or servant of the Realty Company, but had agreed with the latter company to thoroughly protect all work liable to be injured during the erection of the contemplated building, and to take great care to protect the adjoining property and repair any damage done to the same; that it had further agreed to do the requisite shoring to prevent the caving in of the adjoining buildings. Said answer further averred that the refusal of the Hill-O'Meara Construction Company to protect and underpin the plaintiff's walls was without the Realty Company's connivance or consent and that the Realty Company had made demand of the Construction Company to shore plaintiff's walls. The officers of the Realty Company filed a general denial.

The evidence showed the facts above stated and that after the temporary restraining order was granted, the Hill-O'Meara Construction Company underpinned the plaintiff's walls at an expense of some twenty-six hundred dollars. There was evidence that the excavation for the new building would extend in places, to a

depth of more than fifteen feet. In addition to under-pinning plaintiff's walls, that is, building a foundation under them, the Construction Company shored them up.

The contract between the Realty Company and the Hill-O'Meara Construction Company contained these clauses:

"The contractor shall thoroughly protect all work liable to be injured during the construction of the build-ing and shall take great care to protect adjoining prop-erty, and shall repair any damage done by him to same."

"He shall take proper care of the ends of sewers in the manner directed by the architect and shall do all requisite shoring and bracing to prevent caving in of streets and adjoining buildings."

On the final hearing in the circuit court the tem-porary restraining order was made perpetual and after their motion for new trial had been overruled, the de-fendants appealed to this court.

1. By a stream of decisions beginning with Char-less v. Rankin, 22 Mo. 566, and extending to Obert v. Dunn, 140 Mo. 476, the rule has been established in this State that the owner of a parcel of ground is entitled to lateral support for it and his neighbor may not dig the adjacent earth away so as to cause his ground to crum-ble, but that the right to lateral support pertains only to the ground itself in its natural state; not to encumbering buildings or improvements. This doctrine is wide-spread and needs no elaboration, but simply to be stated. By virtue of it plaintiff was without a just claim to have the Reliance Realty Company's lot remain in its natural state in order that his buildings might be supported by the soil around them. The Realty Com-pany, or its licensee the Construction Company, had the right to excavate the contiguous lot, using reasonable care in the work and giving timely notice to plaintiff that it would be done; which duties were observed. On re-ceipt of the notice, responsibility for the safety of his buildings devolved on the plaintiff and he was the one to

prevent injury resulting from the removal of the. contiguous earth.    Charless v. Rankin, supra; Larson v. Met. R. R., 110 Mo. 219; 33 Am. St. Rep. 473; Obert v. Dunn, supra.

2.    The claim is made that as Carpenter's buildings were ancient, he had acquired a precriptive right to lateral support for them.  As stated, we find no evidence in the record that they were ancient and this point is hardly before us.    There was a decision in the case of Casselberry v. Ames, 13 Mo. App. 575, in favor of the creation of such a right; but the question was re-examined in the later case of Handlan v. McManus, 42 Mo. App. 551, and the doctrine of the first one renounced. The authorities bearing on the proposition were extensively reviewed in the latter case and shown not to support the previous decision.    The doctrine of prescriptive right to lateral support for buildings has been held generally to be one peculiar to English jurisprudence and inconsistent with the rule recognized by the American courts in regard to the acquisition of easements by prescription.  In this country the inclination is to require not only a long use of one's own tenement, but an adverse use of the tenement of another, in order to create a prescriptive right in favor of the former tenement against the latter.    Hence, American courts have rejected the doctrine of ancient lights, to which the right of lateral support for buildings is akin.    The question was gone into extensively in the note to Larson v. Met. R. R., 33 Am. St. Rep. 436, where we find this conclusion announced on page 464.  ''So far as our researches extend therefore, it would seem that no American case in which the question has been directly raised, except one, has sustained the right and that this single exception is no longer deemed a sound authority in the court from which it emanated.    On the other hand, there are several cases in which courts of last resort have emphatically rejected as unsound the theory that the right of support can be gained by prescription.''    As suggested above,

the argument which has told against the presumptive acquisition is, that as the claimant of lateral support does not encroach on the premises of the adjoining owner, enjoy an adverse use, or have possession of them, the presumption of a license or grant, which, in theory, underlies a prescription, does not obtain.

3.    The duties of a man who is about to excavate his lot, in respect to his neighbor's building, are to promptly apprise the latter of his intention and to use reasonable care in conducting the excavation so as to prevent injury to the building, if possible. If liability for resulting loss is thrown on him, it is not because he infringes his neighbor's rights in making the excavation, but from his doing the work in a negligent manner, and in recognition of the rule of law that when a man makes any use of a legal right, he must do so in a way not to needlessly injure others. The cost of shoring up, underpinning or taking whatever precautions may be needed to prevent injury to adjacent structures from excavating when carefully done, falls on the adjoining proprietor. Charless v. Rankin, and other cases, supra.

4.    Some other principles need to be noticed in this connection. The rules governing the right to lateral support are the same for subsoil as for surface support. It was suggested in one decision that an inordinate excavation would be an unreasonable use of the land and that the owner ought to be denied the right to dig beyond a certain depth without saving the adjacent owner harmless. But this distinction never took root in the law, because it was inconsistent with the dominion which accompanies the ownership of property. One proprietor has no right to encumber his soil with structures in expectation of having them supported by his neighbor's soil. That would be partially appropriating his neighbor's land to his own use; as it would also be an assertion of the right to build on his own ground and a denial of the same right to his neighbor. Larson v. R. R., note 54, supra; Quincy v. Jones, 76 Ill. 231.

It is ancient and elementary law that a proprietor has dominion not only over the surface of the land he owns, but over the space above and below the surface to any extent he chooses to occupy it.   In populous cities where buildings vary much in size, some being low and small while others are of great height and enormous weight, this rule has proved inconvenient and has been corrected, in some instances, by statutes fixing a maximum depth to which a lot owner may excavate without incurring the burden of protecting adjacent buildings, but providing that if he digs deeper he must protect them.   The Legislature of Missouri has passed no law of the kind.   The theory of those statutes is that the average building will only require a foundation of a certain depth, and if an owner puts in a foundation that deep, he may presume he has anticipated any use his neighbor is likely to make of his lot, and provided against injury from it; and that persons who want to dig deeper may be justly required to safeguard contiguous walls, of legal depth, at their own expense.   But such legislation completely changes the common law, and can only be enacted by the law-making body of the State, or by a municipality to whom the power to enact it has been granted by its charter or  other  statute.   Apart from the particular ordinance before us, we have not found, during much research, any attempt to change the rule of the common law by a municipal ordinance throwing the burden of protection on the party excavating. All such innovations appear to have been made by statute. McMillen & Mauks v. Watt, 27 Ohio St. 306; Jencks v. Kenny, 19 N. Y. Supp. 243; Dorrity v. Rapp, 72 N. Y. 307; Ketchem v. Newman, 116 N. Y. 422.

In Dorrity v. Rapp, supra, the New York Court of Appeals declared that at common law an owner of land contiguous to a building is not bound to safeguard or strengthen the building when he excavates on his lot, or do more than excavate carefully; but that the legislature of New York had interposed to regulate the right to

excavate in the cities of New York and Brooklyn and provide for the protection of buildings at the expense of a person excavating below a certain depth. The statute considered in that case is similar to the ordinance before us, and imposes on an owner who intends to excavate his lot more than ten feet below the curb of the street, the duty of protecting adjacent walls and supporting them so that they will remain stable. The statute was treated as an innovation and a positive change of the law on the subject.

A state legislature has inherent power to change the law in this regard, as in all others, when the change does not infringe some constitutional rule of property; but a city has no power to do so unless the Legislature delegates it. The attempt to shift the burden of protecting contiguous walls from owners to excavators in the city of St. Louis, when an excavation is to go deeper than fifteen feet, was made by a municipal ordinance, not by a State statute; and the ordinance is assailed by the defendants as in excess of the city's legislative power. It is defended by the plaintiff as a legitimate exercise of the city's police power and a performance of its charter right and duty to provide for the safe construction of buildings inside the city limits.

What is called the police power appertains to the sovereignty of a State, but is exercised by that sovereignty through the agency of municipalities as well as through direct statutory enactments operative throughout the commonwealth. That is to say, the power to enact regulations for the welfare, health and good morals of a community within the limits of cities and towns, is largely delegated by the State to its municipal governments. But in every case of municipal legislation under the guise of the police power, express or implied, authority for the ordinance must be found in the charter of the city or in some other statute. A city can only exercise such powers as are expressly granted to it by the State, or fairly implied from or incident to powers ex-

pressly granted, or essential to the declared purpose of the corporation. City of Independence v. Cleveland, 167 Mo. 384; Kirkwood v. Meramec Highlands Co., 94 Mo. App. 637; Knapp v. Kansas City, 48 Mo. App. 485. The only statute from which authority to pass the ordinance in question can be claimed is the clause of the charter giving the St. Louis municipal assembly authority to "provide for the safe construction, inspection and repairs of all private and public buildings within the city." Municipal charter, art. 3, sec. 26, paragraph 12. The deduction that the city, by virtue of that grant of power, may ordain that a lot owner can not dig on his premises beyond a certain depth without taking care of contiguous buildings at his own expense, and thereby revolutionize a fundamental rule of property and the law of the land, is, we think, unwarranted. Such a regulation goes directly, not only to the use of property, but to the right of property; as the essence of property in a thing consists in use, dominion and enjoyment, rather than in title or possession.

In St. Louis v. Hill, 116 Mo. 527, it was held that a statute relating to the city of St. Louis and providing that every house erected on Forest Park Boulevard should be set back forty feet from the edge of the street, was not a proper exercise of the police power of the State but rather a confiscation of private property for public use without compensation; and, therefore, was unconstitutional and void. Interference with a man's right to improve his land as he chooses, and other governmental interferences against common right, are somewhat jealously watched by the courts, and they scan pretty closely the language of municipal charters to see if a particular interference was clearly authorized. Succession of Irwin, 33 La. Ann. 63; State v. Schuchardt, 42 Id. 49.

The charter authority to provide for the safe construction of buildings, we think, has reference to the material to be used, the thickness of the walls, and similar matters which concern the people at large and tend to

promote public safety. It is well for a city to see that buildings are strongly built in order that their occupants may not be endangered; see that foundations are deep enough to be secure, walls of a certain thickness, that the plumbing is sanitary, that fire escapes are provided and non-combustible materials used. Tiedeman, State and Federal Control, sec. 150. All those regulations tend directly to promote the public health and safety. And maybe ordinances to enforce all of them might be upheld under the power to provide for the safe construction of buildings; though they are commonly enumerated in grants of legislative powers to cities. But the public is not concerned as to who shall bear the expense of protecting walls from damage by excavations, and the conclusion may not be drawn, in the interest of the community, that the city is empowered to shift the expense from owners to excavators against the settled rule of law, by virtue of a charter provision authorizing it to provide for the safe construction of buildings. That authority to make the excavator bear the expense is not expressly given by such a clause is plain. Neither is it necessarily implied from the words of the clause or incidental to the legislative power expressly conferred by it; because buildings may be as well protected if their owners bear the expense as if excavators do. Authority to throw the burden on the latter is certainly not essential to the declared purpose of the municipality. As those are all the powers a city has, it follows that the right to enact the ordinance in question as a police measure, has not been delegated to the city of St. Louis by the State.

Not only have we found no decision holding such an ordinance valid as an exercise of the city's police power, but it far transcends in its revolutionary effect on the law, any municipal act which, to our knowledge, has been upheld as valid under a charter empowering a city to regulate the construction of buildings.

The purpose of the Legislature of this State to keep the rules prescribed by the mayor and the municipal as-

sembly of St. Louis in harmony with the law of the
State, plainly appears from the fourteenth paragraph
of the section of the charter in which is found the sup-
posed power to enact the ordinance in question. That
paragraph says the lawmaking body of the city may
pass all ordinances, not inconsistent with the provisions
of the charter, or the laws of the State, that may be ex-
pedient in maintaining the peace, good government
health, and welfare of the city.

In Grand Ave. R. R. v. Lindell R. R., 148 Mo. 637,
the Supreme Court said:

"The ordinances of a city, adopted in pursuance of
its charter, granted by the State, have the force and ef-
fect of laws within said city, and are binding upon all
persons who come within the scope of their operation,
so long as they are not in conflict with the Constitution,
and are in harmony with the general laws and policy of
the State."

That ordinances are invalid if inconsistent with the
laws of the State was declared in St. Louis v. Packing
Co., 141 Mo. 375; Paris v. Graham, 33 Mo. 94; In re
Dunn, 9 Mo. App. 255; Kansas City v. Hallett, 59 Mo.
App. 160, and in many other decisions. The general
principle is recognized and stated in Judge Cooley's
authoritative work on Constitutional Limitations, and
the numerous cases cited in support of the text. (7 Ed., p.
279.) Of course, the Legislature may, by charter or
other statute, confer on a city the right to enact laws at
variance with general legislation and State policy, but
not at variance with the Constitution. But the author-
ity to provide so radical an alteration in the law ought
to be clear. The grant of power to regulate the con-
struction and repair of buildings signifies no intention
on the part of the Legislature of Missouri to authorize
the municipal assembly of St. Louis to change the obli-
gations and duties of adjoining proprietors and ought
not to be construed as validating such an attempt.

In Slaughter v. O'Berry, 48 L. R. A. (N. C.) 442,

an ordinance which provided that a city should do the work and furnish the materials for a sewer connection within three feet of a building, was held void as an unreasonable invasion of the rights of property. The ordinance was enacted pursuant to the city's charter power to put in a sewer system, but was nevertheless, held to be *ultra vires* as being of no service to the public nor necessary to the effective execution of the power to provide sewerage. The opinion deals instructively with the point in hand, and while we quote but an excerpt, the whole ought to be read; for it sheds a clear light on the question of how far municipal action may go and still be a legitimate exercise of some granted authority and when it becomes, instead, an illegitimate encroachment on private rights.

"Where a city has the power to erect a public improvement, and to control, manage and protect the same, the line of demarcation is so small and so delicately drawn between such power and the rights of the individual citizens of the corporation, that it is difficult to run and mark it so as to give the corporation its proper powers without infringing upon individual rights and property rights. But, as delicate as this duty is, it seems to us that in this case the line of demarcation is plainly apparent. But, if it was in doubt, it would have to be resolved against the defendants, and in favor of the plaintiff's individual rights. 1 Dill., Mun. Corp., par. 89; State v. Webber, 107 N. C. 962, 12 S. E. 598; Edgerton v. Goldsboro Water Co. (N. C.), 35 S. E. 243.

"We are therefore of the opinion that the city had the right to require that this connection should be made by its licensed officer; that materials furnished should be proper for such work, and subject to the inspection and approval of the city inspector; and that the work of putting them in should be done under the supervision of the city inspector. But we are also of the opinion that the city had no right to compel the plaintiff to buy

the material from it, nor had it the right to compel the plaintiff to pay it to do the work we have specified and pointed out above in this opinion.''

The ordinance we are considering was examined heretofore by this court in Eads v. Gains, 58 Mo. App. 586. But as the excavation in that case did not extend below the depth prescribed as one to which an excavator may go without protecting an adjoining wall, the part of the act with which we are concerned was not involved in the decision. The last part of the ordinance, which says owners must themselves protect their buildings against damage from excavations not deeper than fifteen feet, was held valid as declaratory of the common law; but the court was careful to limit its decision as to the validity of the ordinance to that part.

Plaintiff's counsel has cited us to certain decisions of the Supreme Court of this State, based on ordinances of St. Louis and other cities, which prescribe a maximum speed for railway trains and street cars, and the care operatives of street cars must take to prevent injury to persons and property, and holding that an action lies for damages in favor of a person who is injured on account of a violation of the prescribed rules. Jackson v. Railroad, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 246. There has been much wavering in the decisions on that proposition and the following cases hold that such ondinances afford no civil remedy for compensation: Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 108 Mo. 142; Moran v. Car Co., 134 Mo. 641; Byington v. Railroad, 147 Mo. 673; Badgley v. St. Louis, 149 Mo. 122; Anderson v. Railroad, 161 Mo. 411. Whatever the law of the subject may be the decisions holding that if the regulation is not observed, a civil liability accrues to a person injured in consequence of its non-observance, are not in point in this case. Such ordinances are enacted under charter provisions whose obvious purpose is to enable a city to make rules to protect life and property from the dangers

incident to the careless operation of trains and street cars; and it is apparent that the ordinances are not *ultra vires* or in conflict with the law of the land; but are, instead, within the words and spirit of the delegated power and consistent with the policy of the State.

The main proposition in the present case, as we conceive it, is not whether a liability would have accrued in favor of the plaintiff and against the defendants if the former had suffered injury by the latter disobeying the ordinance in question; but whether the city had power to pass the ordinance. If power to pass it was lacking, it is a nullity and affords the plaintiff no standing for relief. We are constrained to the opinion that the portion we are dealing with was not within the legislative capacity of the city. The doctrine which to our minds is the one that ought to control the disposition of this cause, was once expressed by a learned jurist in the statement that a municipal corporation may not restrain or prohibit a person from exercising his rights under the law of the land, unless the power to restrain or prohibit is expressly given by the charter, or necessarily results from what is expressly given. Cary v. Washington, Fed. Cases 2,404. Authority to abate nuisances is held not to empower a municipality to declare something a nuisance which is not one at common law, or by statute; that is, to alter the law in regard to what is a nuisance. Allison v. City of Richmond, 51 Mo. App. 133; St. Louis v. Packing Co., 141 Mo. 375. Those decisions rest on a principle which invalidates the ordinance in question in so far as it attempts to alter the rule of law prevalent elsewhere in the State. The police powers of a city ought to be construed with reasonable liberality; but before an ordinance is enforced which will change a fundamental theory of the law so that the change will be sensibly felt in the law's practical effect, its validity should fairly appear from some statute delegating the power to enact it; not be implied simply because the result would be wholesome. Knapp v. Kansas City, supra.

The conclusions to be drawn from what we have said are that the burden of underpinning and protecting the plaintiff's buildings was unjustly imposed on the Hill-O'Meara Construction Company; that the defendants fully performed their preliminary legal duty in giving notice of the intended excavation and thereafter had the right to excavate to whatever depth they chose, without regarding the plaintiff's buildings further than to exercise care to avoid injury to them. They had the right to proceed with the excavation and depend on the plaintiff to take care of his wall. He refused to do this and, instead, forced the Construction Company to do it. Whatever expense was necessarily incurred by that company in underpinning the walls or otherwise protecting them, was an expense he ought to have borne and which, as it was paid for his benefit, he ought to repay. It was decided in Eads v. Gains, that when a property owner does not protect his building after notice, thereby compelling the excavator to incur expense in protecting it, the latter is entitled to recover his outlay. That decision settles the right of the Hill-O'Meara Construction Company to be reimbursed the necessary expense it was put to in underpinning the plaintiff's building. Of course, some part of the expense the Construction Company went to may have been unnecessary; that is a matter to be further ascertained from evidence.

6.    Plaintiff's counsel insists that whether the ordinance be valid or not, as the Construction Company called plaintiff's attention to it in the notice sent to him, said company thereby adopted the ordinance as valid and could not afterward repudiate it. In answer to this contention we may say that the petition contains no allegation concerning the conduct of the Construction Company in that regard, but grounds plaintiff's claim to relief exclusively on the ordinance and not on an estoppel against the Construction Company by virtue of its reference to the ordinance. To determine the case in favor of the plaintiff on that fact would be to render a

judgment outside the pleadings and the issues on which the case was decided in the court below and without affording the Construction Company an opportunity to defend against the estoppel. Walker v. Owen, 79 Mo. 563. But there is no element of estoppel in the matter at best. It is true the Construction Company called the plaintiff's attention to the ordinance when it notified him to protect his walls; but it is also true that in his reply he cited the ordinance himself and asked if the excavation would exceed fifteen feet. His inquiry was not answered and he instituted the present suit. No fraud was perpetrated on him, nor was he misled by the circumstance to his disadvantage. The validity of the ordinance was a legal question and he is presumed to have had as much knowledge of the law as the Construction Company.

A case arose in the District of Columbia (Fowler v. Saks, 18 D. C. 570) in which an ordinance somewhat like the one under review, but relating to a party wall, was held valid on the ground that one owner of a party wall has no right to tear it down, and if he does, is liable for damages. But the building commissioners of the District of Columbia had provided, pursuant to an act of Congress, that one owner of a party wall might demolish it on condition of rebuilding it entirely at his own expense. The condition was upheld; because, as the commissioners had power under the act to change the law, they had power to prescribe the conditions. In that case it was said one can not take the benefit of a building ordinance and repudiate its burdens. But the remark meant, as appears from the context, that one owner of a party wall could not take it down by virtue of the building regulations and then repudiate the conditions which those regulations attached to the right to take it down. There something had been done by the party to be estopped which would entail loss to the other party unless he was estopped. He had torn down the wall, to his co-owner's detriment, and sought to evade

the expense of rebuilding it, which the law said he must incur and which it was necessary he should incur in order that his co-owner might be made whole. In the present case the Construction Company did not tear down the plaintiff's wall, or in any way damage it. It merely mentioned the building ordinance in a notice which did him no injury.

7. It is further contended that as the Construction Company bound itself by contract with the Realty Company to protect the adjacent walls, the contract was made for the benefit of plaintiff as the owner of those walls and he is entitled to enforce it. This position is untenable. That clause of the contract between the Construction Company and the Realty Company which the plaintiff invokes, was designed as an indemnity to the latter company against any possible loss it might be called on to make good on account of injury to the adjacent walls or the street, and was in no sense a contract for the benefit of the plaintiff or the city, or one on which either could sue. The observance of the contract might have, and doubtless would have redounded incidentally to the plaintiff's benefit; but that circumstance gave him no right of action on it. Koken Iron Works v. Livers, 147 Mo. 580; Howsman v. Water Co., 119 Mo. 304; Blum v. O'Connell, 99 Mo. 357; New Haven v. Railroad, 62 Conn. 253. Moreover, we think a just construction of the contract between the Construction Company and the Realty Company did not bind the former to underpin the buildings as it was compelled to do by the injunction; but only bound the Construction Company, as between it and the Realty Company, to save the buildings from harm; and if they had been harmed (as they were not) the only party that could have sued on the contract was the Realty Company and it only after it had been damnified by paying for the injury done to the buildings. The indemnity clause certainly can not be held to have enured to plaintiff's benefit in such sense as to relieve him from the duty of taking care of his

walls and from all the expense necessary to do it, and transfer the duty and expense to the Construction Company. If it had that effect it was equivalent to awarding the plaintiff a large sum of money by virtue of a contract to which he was no party and for which he advanced none of the consideration. The Realty Company owed him no duty to protect his buildings and could not have contracted for his benefit except as a gratuity; which no one will say was its intention, or the Construction Company's understanding. The Realty Company was contracting solely for its own benefit and to guard against any loss that might befall in the course of erecting the new building.

Moreover, the plaintiff did not sue on the contract nor refer to it in his petition. At the trial the Realty Company not the Construction Company, introduced the contract in evidence; but plaintiff did not then amend his petition in an endeavor to take advantage of the contract. Hence, a decision in his favor on this point, as on the preceeding one, would be outside the issues. Walker v. Owen, supra; Hollman v. Lange, 143 Mo. 100; Evans v. Kunze, 128 Mo. 670.

We have thus gone over the several propositions raised and discussed by counsel and have reached the decision that the plaintiff was not entitled to restrain the defendants from proceeding with the erection of the building until they had, at their own expense, sustained, protected and underpinned plaintiff's walls, as the writ of injunction required them to do.

The judgment is, therefore, reversed and the cause remanded, with the direction that the injunction be dissolved. *Bland, P. J.,* and *Reyburn, J.,* concur.