CITY OF STURGEON, RESPONDENT, v. THE WABASH RAILWAY COMPANY AND THE WILLIAM POLLOCK MILLING & ELEVATOR COMPANY, APPELLANTS.*

Kansas City Court of Appeals. February 11, 1929.

*Don C. Carter* for respondent.

*Fry & Hollingsworth* for appellant, Mill & Elevator Company.

LEE, C.—This is an appeal by the William Pollock Milling & Elevator Company from a decree rendered in a suit brought by the city of Sturgeon, a city of the fourth class, in Boone county, Missouri, requiring appellant to abate a nuisance by removing certain sheds and buildings used by it in carrying on its coal business, said buildings being located on the right-of-way of the Wabash Railway Company in said city.

The railroad's right-of-way runs east and west, crossing Ogden street at a point near the heart of the city, and dividing most of the business section from a large part of the residence section. It appears that Ogden street is the main thoroughfare of the city, and is the highway over which a large part of the traffic from the country on the south comes into town.

The main track of the railroad runs along the northerly part of the right-of-way. South of and parallel with it and crossing Ogden street is a switch track. South of and parallel with this, also crossing Ogden street, is another switch track, referred to in the evidence as the "house track." These two switch tracks merge with each other and with the main track some distance east of the crossing. On the east side of Ogden street and within three or four feet of the house track, but still within the right-of-way, stands the first of the buildings in question, being a frame structure, alleged in the petition to be about eighteen feet by twenty feet, and about fifteen feet high, its long dimension being parallel with the track. End to end with this building, and perhaps two or three feet east from it, and also parallel with the house track, is the second of the buildings in question, alleged in the petition to be about twenty-four feet by thirty feet, and about twenty feet high. Forty-three feet east of this easterly building stands a filling station, the approach to which is had along a street parallel with these two buildings, on the opposite side of them from the railroad track. The ground upon which the building stands is leased by the appellant from the railway company under a lease which was introduced in evidence, of which the only part printed in the record provides: "Party of the second part is not to create or permit to be created or to exist upon said leased premises any nuisance, public or private,

during the continuance of this lease, and to save and keep harmless party of the first part from any suit or claim growing out of any such nuisance thereon.''

The evidence shows that for several years past appellant has been using these buildings for the storage of coal to be sold at retail, the coal being unloaded into them directly from the cars, which for this purpose are ''spotted'' alongside the buildings on the house track.

There are numerous allegations in the petition as to the unsightliness, lack of repair and fire hazard of the buildings, but as the court did not base its finding upon these allegations they need not be considered further. The petition also alleged that the buildings were a source of danger to pedestrians and persons in vehicles using said Ogden street crossing, for the reason that trains approaching from the east could not be seen by such persons until they had reached the south switch track of the railroad, and that in fact a death had been occasioned thereby.

On September 3, 1925, the city passed an ordinance reciting that said buildings ''are hereby declared to be a public nuisance within the opinion of the board of aldermen, and are hereby ordered to be torn down or removed from their present location to such location within the city as will not create or constitute a public nuisance.'' The ordinance further declared that a failure to tear down or remove the buildings would subject the owners to a fine of $10 per day; and further provided that a copy of the ordinance be served upon the owners of the buildings and upon the railway company. The petition recited this ordinance and its violation by defendants, and prayed judgment for the accrued penalty thereunder; and further prayed ''that said defendants be ordered and required to remove or tear down said buildings immediately, as constituting a nuisance on the day and date of the passage of said ordinance.''

The defendant railway company secured the removal of the cause, as to it, to the Federal court. The defendant William Pollock Milling & Elevator Company, appellant herein, filed its demurrer to the petition, on the ground that it did not state a cause of action. Upon the overruling of said demurrer appellant filed its answer, alleging first, a general denial; second, that the ordinance was null and void under the laws of the State of Missouri, and third, that the ordinance was contrary to section 30 of article 2 of the Constitution of Missouri, and to section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it attempted to deprive defendant of its property without due process of law.

At the trial of the case on November 22, 1927, the plaintiff dismissed all its claims for the penalty, and the only issue tried was as to the abatement of the alleged nuisance. The court found in favor of plaintiff and rendered its decree, reciting the facts as to

the location and use of the buildings in the city, and in substance, that a large number of railway trains crossed said street each day without stopping or checking speed, some of them at a speed of from fifty to sixty miles per hour; that by reason of the proximity of said buildings to the tracks the view of approaching trains from the east was almost entirely shut off from persons approaching from the south, to such an extent as to be highly dangerous to life and property, and detrimental to the welfare of the inhabitants of the city; that the buildings were a public nuisance in fact and in contemplation of law, and were such public nuisances at the date of the passage of the ordinance referred to; that the standing of cars of coal on said railway track for the purpose of being unloaded into said buildings, for several days at a time, also tended to further obstruct the view of the approaching trains, and added to and aggravated the nuisance aforesaid; that the electric bell and signalling device maintained by the railway company at said crossing was inadequate and insufficient; that the defendant Milling & Elevator Company had been notified and requested by the city and its officers to remove said buildings, but had refused to do so, and that the city had duly passed the ordinance in question, and that same had been duly served upon the defendant; and that said sheds and buildings could with the consent of the railway company be removed at little expense to a more suitable location on the right-of-way, where they would not be an obstruction to the street and crossing. The decree then ordered the defendant, the William Pollock Milling & Elevator Company, "to remove said sheds and buildings from their present location on the right-of-way of said Wabash Railway Company on or before the first day of May, 1928, and on or before said date to remove and abate the public nuisance aforesaid." From this judgment and decree the William Pollock Milling & Elevator Company appealed to this court.

The city has no power to declare that to be a nuisance which is not so at common law or by statute. [Allison v. City of Richmond, 51 Mo. App. 133; Carpenter v. Reliance Realty Company, 103 Mo. App. 480, 77 S. W. 1004; St. Louis v. Heitzenberg Packing Co., 141 Mo. 375, 42 S. W. 954; Crossman v. Galveston (Tex.), 247 S. W. 810, 26 A. L. R. 1210.] Even where the general power exists to declare a nuisance, a city cannot declare the place of a single individual to be a nuisance in the absence of a general regulation applicable to all others of the same class. [19 R. C. L., section 117.] Neither can a city by virtue of the police power alone, for purely aesthetic purposes, limit the use which a person may make of his property. [19 R. C. L., section 140.]

However, cities of the fourth class in Missouri, while not authorized to declare nuisances which are not so in fact, are nevertheless expressly authorized to abate nuisances when shown to exist.

Section 8474, Revised Statutes 1919, provides that they may "make regulations . . . to prevent and remove nuisances." Section 8477 provides that they may "pass ordinances for the prevention of nuisances and their abatement." These clauses appear under the sections respecting quarantine, health regulations and sanitary conditions, and if for that reason they are not broad enough to cover all public nuisances they are supplemented by section 8694, applicable to all cities organized under the general statutes, which provides that such cities "are hereby granted the power to suppress all nuisances which are, or may be, injurious to the health and welfare of the inhabitants of such cities. . . . Such nuisances may be suppressed by the ordinances of said cities, or by such act or order as the charters of said cities authorize them to adopt."

In this case, the court did not base its decree upon the ordinance or even upon the allegations therein, as repeated in the petition, and evidence thereof, that the buildings were old, dilapidated, unsightly, a harbor for tramps, and constituted a fire hazard. The decree was based solely upon the finding that the buildings as constructed, situated and maintained obscured the view of persons approaching the crossing on the public street "to such an extent that the use of the said crossing and footwalks is rendered highly dangerous to life, limb and property, and detrimental to the welfare of the inhabitants of said city; that said buildings as thus constructed, situated and maintained constitute and are and were at the time of the institution of this suit a public nuisance in fact and in contemplation of law, and were such public nuisances at the date of the passage of the ordinance."

The petition is broad enough to support this finding even after striking out or treating as surplusage the allegations as to unsightliness, dilapidation, and fire hazard, and as to the ordinance. The recitation of the ordinance in the petition, and the fact of service of a copy of it upon defendants, may be regarded, first, merely as a basis for the claim for a penalty, later abandoned; and, second, as an allegation of notice having been given to defendants to abate the common-law public nuisance, which existed in fact and not by virtue of the ordinance. Beyond this the recitation of the ordinance may be regarded as surplusage, the finding of the court being based on the allegation and proof of the nuisance in fact.

Numerous witnesses testified at the trial, and photographs of the physical situation were introduced. There was ample evidence to justify the finding of the court that the maintenance of the buildings at the point in question, under the circumstances shown, creates a condition dangerous to the general public, which constitutes a public nuisance in respect to the use of a public street of the city. The generality of the peril caused by the maintenance of the thing

complained of is sufficient to render it a public nuisance, if it be a nuisance at all. [Radney v. Town of Ashland, 199 Ala. 635, L. R. A. 1917E. 366, 75 So. 25; Fields v. Stokly, 99 Pa. 306, 44 Am. Rep. 109.] The nuisance need not affect everybody, in order to be a public one, if it affects all those who are using a right which is in common to all.

"A nuisance is public when it affects the rights enjoyed by citizens as part of the public, as the right of navigating a river, or traveling on a public highway; rights to which every citizen is entitled." [Joyce on Nuisances, section 5.]

"A common nuisance is an act which obstructs or causes inconvenience or damage to the public in the exercise of rights common to all her majesty's subjects." [Queen v. Price, L. R. 12, Q. B. D. 247, 256.]

No exception was taken by defendant at any stage of the proceedings on the grounds of a defect in party plaintiff.

"By the weight of authority a municipality may, at least in the absence of any other or special remedy available to it, maintain a suit to enjoin or abate a nuisance which affects matters that have been confided to it as a governmental agency, even though it suffers no such special damage as is necessary to sustain a suit on the theory of a private nuisance." [19 R. C. L. 177, p. 878; Coast Co. v. Spring Lake, 58 N. J. Eq. 586, 47 A. 1131, 51 L. R. A. 657.]

The decree being based upon the finding of a common-law nuisance, and not upon the ordinance, no constitutional question arises on the issue of the validity of the ordinance. But appellant contends that the decree has the effect of taking its property without due process of law. The cases cited by it on this point, however, do not sustain the contention. Radney v. Ashland, 199 Ala. 635, and Village of Bennington v. Hanks (Vermont), 50 A. L. R. 983, hold that a bill for an injunction will not lie merely because the building in question is alleged to be old and dilapidated and a fire hazard, without alleging facts and circumstances which give character to the structure. That is not the basis of the decree in this case. Aufderheide v. Polar Wave Ice & Fuel Co., 4 S. W. (2d) 776, 1. c. 785 (Mo. Sup. Ct.), was a case where adjoining property owners sought to enjoin an anticipated future private nuisance threatened by the erection of an ice plant. The court held that this was a useful, legitimate and lawful business enterprise, not constituting a nuisance *per se* when reasonably and properly conducted; and stated that "this being an action to enjoin an alleged anticipated or prospective nuisance, as distinguished from an action to abate an existing nuisance, the degree and character of proof required differs from that required in an action to abate an existing nuisance, and must be such as to make clear, certain and free from

all substantial doubt that the anticipated nuisance certainly and inevitably will result.'' The case of Ex parte Davison, recently decided by the Missouri Supreme Court, was an appeal from a fine imposed under an ordinance forbidding the opening of a stone quarry within three hundred feet of any building used as a residence or place of public assemblage. The court held that a stone quarry is not a nuisance *per se,* and that the city could not prohibit the use of his property by an owner simply because of possible future injuries to others. These cases differ from the case at bar, in which the facts and circumstances constituting the building a public nuisance are definitely alleged, and are found by the court as existing facts.

The case of Allison v. City of Richmond, 51 Mo. App. 135, cited by appellant, was not a suit for an injunction, but was an action for damages for the destruction by the city of plaintiff's building. The city had declared that the building ''was in a dangerous situation and annoying to the public,'' and ordered the marshal to tear it down and haul it away, which he did. The court held that the building itself was not shown to have constituted a nuisance *per se,* as being within the fire limits, if there were any; that ''if the use to which the building was being put was so hazardous as to be a nuisance, this would only authorize the suppression of the use and not the destruction of the building.'' A judgment for the trespass was sustained.

In the present case the city did not undertake itself to remove or tear down the buildings, nor to require its destruction by the defendant. The evidence shows that the buildings, which stood on leased ground, belonged to the defendant, and that it was only their maintenance in their present location which constituted a public nuisance. The decree did not order their destruction, but merely that defendant ''remove said sheds and buildings from their present location on the right-of-way'' before a date named, and ''to remove and abate the public nuisance aforesaid.'' The court made a finding (although it was not necessary for it to do so, having found existence of a public nuisance) that such a removal could be made at little expense 'to defendant. The defendant's right to and title in the buildings was not affected by the decree.

Defendant did not own the real estate upon which the buildings stood. The very lease which constituted appellant's only right to occupy the land contained the express requirement that it would ''not create or permit to be created or to exist upon said leased premises any nuisances, public or private,'' and the decree issued merely had the effect of ordering the abatement of that which in its lease (the sole basis of its rights there) it had contracted not to maintain.

The railway's right-of-way is held for use for railway operating purposes, or purposes incidental thereto. The storage of coal for commercial uses for the profit of others is neither a railway purpose nor incidental thereto. It is therefore not necessary to consider what would be the rights of the railway company in respect to the erection of its own structures in a similar location. The railway has no more right than any citizen to maintain a public nuisance not connected with its own railway purposes. [19 R. C. L., sec. 159, p. 856.] It can therefore grant no such rights to its lessee. In Wylie v. Elwood, 134 Ill. 281, 25 N. E. 570, 23 Am. St. Rep. 673, the railway company had leased ground on its right-of-way for the storage of coal, handled by steam power, resulting in much noise and dirt. In sustaining a judgment against the lessee for damages, the court said:

"A railroad company has the power to do certain things, which it has also the discretion to do in particular ways and at particular places. It needs grounds upon which it may receive and discharge its freight and passengers. It may use its right-of-way for such purposes. Its discharge of a certain kind of freight at one place upon its right-of-way may work serious injury to property owners, while its discharge of the same at another place thereon may not produce any such injury. The selection of a locality where damages are inflicted, in preference to one where damages will not be inflicted, cannot be said to be necessary to the ordinary and prudent operation of the road. . . . This structure, though not a nuisance *per se,* became such by reason of the particular locality in which it was situated. It is as much the duty of a railroad company as of an individual to so use its property as not to injure others. The question whether or not the coal shed and its machinery were located in a proper place was fairly left to the jury by the instructions of the court."

By common practice since railroads were instituted, railway companies have been permitted to acquire and hold rights-of-way much wider than the space actually covered by their tracks. One obvious reason for this, commonly recognized, is the danger which would arise from the rapid operation of trains close to the property line. No presumption can arise that they may for profit authorize others to maintain a nuisance on their right-of-way. The lease in this case expressly recognized this fact.

Appellant contends further that inasmuch as its co-defendant, the Wabash Railway Co., had prior to the trial removed the action as to it to the Federal court, therefore the circuit court of Boone county was without jurisdiction to try the cause. The relief prayed for in the petition and granted by the decree does not require any action by the railway company as lessor and owner of the land, and

it does not affect the property rights of the railway company in any way. This being the case, the railway company was not a necessary party to the suit to abate the nuisance. In the case of State v. Bandell (Mo. App.), 299 S. W. 155, the court says:

"We understand the general rule to be that a suit to abate or restrain a nuisance must be brought against the owner of the fee, unless the nuisance complained of is of such a character that his presence in the suit is not necessary to a complete determination of the controversy. Thus, in the case of lessor and lessee the lessor is a necessary party defendant unless the nuisance complained of consists simply of acts or movable structures of the lessee in which the lessor is not concerned."

The present case seems to fall clearly within this exception. In any event appellant waived its objections by going to trial without raising any objection to the jurisdiction of the court because of defect of parties defendant, a point which it raised for the first time in its motion for a new trial. [Olmstead v. Rich, 6 N. Y. Sup. 826.]

The judgment of the trial court should be affirmed. *Barnett, C.,* concurs.

PER CURIAM:—The foregoing opinion of LEE, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Bland* and *Arnold, JJ.,* concur; *Trimble, P. J.,* absent.