MASSELL REALTY IMPROVEMENT COMPANY *v.* MacMILLAN COMPANY; *el vice versa.*

Nos. 6568, 6569.  FEBRUARY 23, 1929.

*Albert E. Mayer,* for Massell Company.

*Watkins, Asbill & Watkins,* for MacMillan Company.

ATKINSON, J.   The MacMillan Company, owner of a lot in the

City of Atlanta, constructed a large building in which it conducts a large mercantile business and many employees are engaged. The south wall of the building was constructed along the south line of the lot. The company received from the Massell Realty Improvement Company a letter which stated: "Please be advised that we are proceeding to erect a building upon the lot immediately south of your property; and for the purpose of erecting this building the lot adjoining your property on the south will be excavated by us to a depth of twelve (12) feet and six (6) inches. Please . . be governed accordingly." The MacMillan Company instituted a suit to enjoin further excavation until the Massell Realty Improvement Company "has complied with the law and protected the property of petitioner from any damage that may occur from the excavating by it." The petition alleges that the "excavating . . is improper and illegal under the building code of the City of Atlanta," a copy thereof being set out; also that the "excavating . . is being done in a negligent and unlawful manner," because the defendant "has taken no reasonable precaution to protect the property of petitioner;" that there is grave danger of injury to petitioner's property and causing irreparable damage; that the plans of the proposed building are defective; that the walls would be insufficient "to carry the weight" of the building; that the building would be a dangerous structure likely to collapse and cause injury to petitioner's property and to its employees and the general public. There is a prayer that the defendant be enjoined from constructing the building "until the plans have been so changed as to make the building . . safe," so as "to protect the property of plaintiff against the unlawful injuries threatened by defendant."

A demurrer and an answer to the petition were filed. In the demurrer the ordinance referred to in the petition as the building code of Atlanta was attacked as void, (a) because the charter of the city did not authorize its adoption; (b) because it is violative of the due-process clauses of the State and Federal constitutions. Another ground of demurrer was that under the allegations of the petition the defendant is not required by law to protect improvements upon the property of the plaintiff. This point was brought out more elaborately in the answer, by stating that the defendant has done nothing to deprive plaintiff of the lateral support of said property "in its natural state," and it is under no duty "to

provide lateral support resulting from the additional burden put upon" plaintiff's property "by reason of the large and heavy building constructed upon said property by plaintiff." At an interlocutory hearing the judge granted an order that the defendant and its agents, servants, and employees be enjoined from excavating on its lands "below the level of the bottom of plaintiff's building adjoining said lands, and enjoined from erecting any building thereon without providing support for the land of plaintiff referred to in its petition, and the building erected thereon, which support may be provided by defendant either by shoreing and underpinning the building of plaintiff erected upon said lot, without damage thereto, or by building a wall of such strength as to protect from falling or damage the building of the plaintiff. . . If the defendant so protects the property of the plaintiff, . . it may proceed to excavate on its land to the depth desired by defendant." Further, "that should the defendant elect to protect the building and land of plaintiff as authorized herein so to do, and should this order be reversed, and should it finally be determined that the defendant is not obligated to provide lateral support for the land or soil of plaintiff except in its natural state, then and in that event the plaintiff shall be obligated to and defendant shall have the right to recover from the plaintiff the necessary and reasonable expense and cost incurred by the defendant in providing for the support for the land of plaintiff and protecting the foundation of the building erected thereon, to the extent that said expense is in excess of what would have been the expense of defendant in providing for the support of the soil of plaintiff in its natural state with no building or burden thereon. In the event that it should finally be determined that defendant is not obligated to provide for the protection of the land and building of the plaintiff as set out herein, the right of the [defendant] to recover for the extra cost of protecting the property of the plaintiff shall in no way be hindered or affected by this order, and the defendant may recover such necessary and reasonable cost so incurred by it of the plaintiff in this cause or in an independent action brought to recover the same. Defendant shall not be enjoined or restrained in any other particular than as set out in this order." To this judgment the defendant excepted. The plaintiff in a cross-bill excepted to certain parts of the judgment.

No question is raised in this case as to the right of the plaintiff to protection of its wall against the dangers flowing from the excavation on the defendant's lot. The question is, upon whom does the duty of providing that protection rest, the owner of the wall or the party doing the excavation?

It is stated in 1 R. C. L. 380, § 14: "The principle that the owner of land has the right to lateral support from the adjoining soil, and that the adjacent proprietor may not remove the earth to such an extent as to withdraw the natural support of his neighbor's soil without being liable for the injury, . . may be regarded as a settled doctrine of the common law." It is further said that this right "applies only to lands in their natural condition, and does not extend so as to give the owner of a building erected on the confines of his land the right to have it supported laterally by the land of his neighbor, for it would not be right to deprive a person of the use of his land for any of the ordinary and legal purposes by reason of the fact that an adjoining landowner may, before that time, have erected a structure upon his own land. The principle established by the authorities is, that one landowner can not, by altering the natural condition of his land, deprive the adjoining proprietor of the privilege of using his own land as he might have done before; and consequently, that he can not, by building a house near the margin of his land, prevent his neighbor from excavating his own soil, although it may endanger the house." See also note to Voeckler v. Stroehmann's Vienna Bakery, Ann. Cas. 1917A, 350 (75 W. Va. 384, 83 S. E. 1025); 1 C. J. 1214, §§ 36, 39.

In *Montgomery* v. *Trustees*, 70 *Ga.* 38, 49 (decided in 1883), it was said: "The law is that the owners of adjoining land owe to each other, as incident to their juxtaposition, the lateral support of the soil of each to that of the other, in its natural state, whether they derive title from a common grantor or not. If they derive title from a common grantor, then that lateral support extends further than that of the soil in its natural condition, and embraces the superincumbent weight that may be upon it by fence, wall, or other burden. If, at the time the common grantor parts with title, there be buildings adjoining each other, then the right extends to the lateral support which each adjacent wall gives to the other. If there be between the two proprietors a party wall—that

is, a common wall between them, supporting the timbers of each,— then the right of each to that wall for the support it gives his building is that of a tenant in common with the other, and neither can touch it so as to displace the other's timbers therein supported, or in any wise injure or make them insecure." After the decision in that case the Code of 1895 was adopted by the legislature, which included the following: "Owners of adjoining lands owe to each other the lateral support of the soil of each to that of the other in its natural state. If they derive title from a common grantor, the lateral support embraces the weight of walls and other burdens that may be on it; and if at the time of sale there are buildings adjoining each other, the right extends to the lateral support which each adjacent wall gives to the other." § 3047. "The owner of adjoining land has the right, on giving reasonable notice of his intention so to do, to make proper and needful excavations even up to the line for purposes of construction, using ordinary care and taking reasonable precautions to sustain the land of the other." § 3048. This was the first appearance of this law in the Code, and by reason of legislative adoption of the Code it has the force and effect of a statute. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). These sections now appear in the Civil Code of 1910 (which also was adopted by the legislature) as §§ 3619 and 3620. So the question for decision depends upon proper construction and application of these provisions of the Code.

There is no contention that the parties derived title from a common grantor; therefore so much of the statute as defines the rights of parties claiming under a common grantor has no application to the case. The pertinent portions of both sections may be read together thus: "Owners of adjoining lands owe to each other the lateral support of the soil of each to that of the other *in its natural state.* . . The owner of adjoining land has the right, on giving reasonable notice of his intention so to do, to make proper and needful excavations even up to the line for purposes of construction, using ordinary care and taking reasonable precautions *to sustain the land of the other."* The words "using ordinary care and taking reasonable precautions to sustain the land of the other," as employed by the statute, contemplate affirmative action "to sustain the land of the other." What affirmative action will be required in a

given instance most depend upon the facts of the case, determinable under the rules of law defining "ordinary care" and "reasonable precaution." The party desiring to make the excavation does not perform his whole duty to the other by giving him notice of the intention to excavate. It remains further for him to exercise ordinary care and reasonable precaution to "sustain the land" of the other as the excavation is being made and in the changed condition. The provision of the statute is reasonable, because the excavator is the one whose work as it progresses tends to cause injury. It would be impracticable for the other party always to have his employees at the place, interfering with the work of excavation; and it might be difficult for the other party to gain entrance upon the property. These and similar reasons may have been in the minds of the legislators in employing the language used in the statute. But it is contended that the duty of *sustaining,* above referred to, extends only to the soil in its natural state, and does not include buildings attached to the soil. The statute does not so declare. It uses the word *land,* and that word ordinarily includes all things permanently attached to the soil. In *Bass* v. *West,* 110 *Ga.* 698 (36 S. E. 244), a lessee having possession of a storehouse was deprived of his possession, before expiration of his term, by the act of his landlord in excavating on another lot so near the leased premises as to cause the building to fall. The tenant brought suit against the landlord. There were other features of the case; but in the opinion it was said by Mr. Justice Cobb, speaking for the court: "What duty did the defendant owe the plaintiff in respect of the matter in question? Section 3048 of the Civil Code provides: 'The owner of adjoining land has the right, on giving reasonable notice of his intention so to do, to make proper and needful excavations even up to the line for purposes of construction, using ordinary care and taking reasonable precautions to sustain the land of the other.' Under this section, before making any excavations at all, the defendant should have given the plaintiff notice of his intention to do so; and, even after notice given, it was incumbent on the defendant to have taken reasonable precautions to prevent the plaintiff's wall from falling."

That decision was followed in *Wilkins* v. *Grant,* 118 *Ga.* 522 (45 S. E. 415), in which a contractor made an excavation on a city lot which withdrew lateral support from the adjoining lot on which a house was located, and caused injury to the house. The owner of

the lot was allowed to recover damages for the injury to the house. The underlying principle in the last clause of the statute and in the two cases cited above is, as in the present case, that the excavator must so use his own property as to avoid unnecessary injury to the property of the adjacent proprietor. This does not deny his right of property, but imposes upon him a duty to the adjoining proprietor as to the manner in which he shall use his property, for a violation of which he commits a tort. Walker *v.* Strosnider, 67 W. Va. 39 (67 S. E. 1087, 21 Ann. Cas. 1); Knapp *v.* Siegley, 120 Wash. 478 (208 Pac. 13); Stevenson *v.* Wallace, 27 Gratt. (Va.) 77. See, on the general subject, 1 R. C. L. 385, 394, §§ 20, 32. Those cases were not dealing with the statute now under consideration, but they applied the underlying principle of the statute and the above-cited decisions by this court. From what has been said, under proper construction of the Civil Code (1910), §§ 3619, 3620, where a proprietor desires to make a necessary excavation up to the line of a lot for the purpose of constructing a building, and the adjacent proprietor has an existing building the wall of which extends along the property line, so that the work of excavating will withdraw lateral support of the wall and tend to render it unsafe, it is the duty of the party desiring to make the excavation to give the adjoining proprietor reasonable notice of his intention to make the excavation, and also to exercise ordinary care and take reasonable precautions to sustain the land of the other, so as to avoid injury to the land including the building thereon. A different result was reached in the case of Carpenter *v.* Reliance Realty Co., 103 Mo. App. 480 (77 S. W. 1004), applying the common law of force in that State. In the very able opinion rendered in that case, however, it was not contended that a statute might not change the rule therein applied.

The rulings announced in headnotes 2-6 do not require elaboration.

*Judgment affirmed on the main bill of exceptions, and reversed on the cross-bill. All the Justices concur.*